# Smith *v.* Dinkelspiel.

*Trespass de Bonis Asportatis, against Sheriff.*

1. *Damages for trespass in making wrongful levy; carrying on illegal business.*—In trespass against a sheriff, for levying an attachment on the stock of liquors and bar-fixtures in a liquor saloon, which plaintiff claimed as a purchaser from the defendant in attachment, he is entitled to recover the value of the property as damages, although he was carrying on the business without a license; but he can not recover anything as special damages on account of his business being broken up by the levy.

2. *Assignment of lease.*—When a lease contains a n express stipulation that the premises shall not be sub-rented without the written consent of the lessor, he alone can avoid or take advantage of an assignment contrary to its terms.

3. *Secondary evidence as to collateral writing.*—When a writing is mentioned

tioned incidentally, or as collateral merely to the issues involved, a witness may testify to its execution and contents, without producing it, or accounting for its non-production.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. James B. Head.

This action was brought by Simon Dinkelspiel, against Jos. S. Smith and others, to recover damages for an alleged trespass; and was commenced on the 15th February, 1889. The alleged trespass was the levy by Smith, as sheriff, of several attachments against E. Oppenheimer & Co., on the bar-fixtures, stock of liquors, &c. in a bar-room in Birmingham called the "Merchants' Saloon," of which the plaintiff was at the time in possession; and he claimed damages, not only for the value of the property levied on and sold, but also on the ground that his business was broken up by the levy. The attachments were sued out against Oppenheimer & Co., from whom the plaintiff claimed to have purchased the property and the business, and were levied in November, 1888, the plaintiff's purchase having been made, as alleged, in July preceding. The sureties on a bond of indemnity given to the sheriff, were joined with him as defendants. The "Merchants' Saloon" was first conducted by Black & Morgan, under license regularly issued; but Black sold out to Oppenheimer, who afterwards bought out the interest of Morgan, and then sold out to plaintiff; and the licenses seem to have been transferred on each sale or assignment. The defendants separately pleaded not guilty, and joined in two special pleas, Nos. 4 and 5, which alleged that the plaintiff, at the time of the levy, was engaged in the business of retailing spirituous liquors at said saloon without a license, and contrary to law; plea No. 4 denying his right to recover any damages, and No. 5 denying his right to recover special damages on account of his business being broken up. The court sustained a demurrer to each of these special pleas, and the cause was tried on issue joined on the plea of not guilty.

The defendants assailed the validity of the plaintiff's purchase from Oppenheimer, on the ground that it was fraudulent, and that Oppenheimer still retained an interest in the business. The plaintiff produced the lease of the property by the owner to said Black, which he claimed had been assigned to him, at the time of his purchase; the defendants objected to its admission as evidence, because it contained a stipulation against sub-renting or assignment without the written consent of the lessor, and there was no evidence of such written consent; and they excepted to the overruling of their objection. One Burt White, who was a bar-keeper in the house at the

34

time of the sale and transfer to plaintiff, testified that, on a· settlement of his accounts with the house at the time, a balance of $260 was found in his favor, for which a due-bill was given him by Oppenheimer, or plaintiff, or both, but he could recollect which. The plaintiff, testifying in reference to this, said that he gave the due-bill, and afterwards paid $50 on account of it to White. The defendants objected to the admission of this evidence, because the due-bill was not produced, nor its absence accounted for; and they excepted to the overruling of their objections.

The rulings of the court on the evidence, on the pleadings, and in the charges as to the measure of damages plaintiff was entitled to recover, are assigned as error.

J. J. ALTMAN, and HEWITT, WALKER & PORTER, for appellant, cited *Johnson v. Insurance Co.*, 129 Mass. 555; 17 Amer. Dec. 423; 54 Ala. 150; 80 Ala. 412; 50 Amer. Dec. 255.

WEBB & TILLMAN, contra, cited *Pollock v. Gantt*, 69 Ala. 373; 1 Suth. Damages, 153, 418–19; 3 *Ib.* 476; 39 N. J. Law, 707.

CLOPTON J.—Appellee, in his complaint in an action of trespass, lays and seeks to recover, in addition to the value of the property taken, special damages for breaking up his business. He purchased the property from E. Oppenheimer & Co., against whom the attachments levied thereon were issued. It consisted of a stock of spirituous and vinous liquors, tobacco, cigars, and bar fixtures and furniture, which were used at the time of the seizure by plaintiff in carrying on the business of retailing without a license, in violation of the statute. The use of the property in an unlawful business is set up by the defendants in bar of plaintiff's right to recover, first, its value, or any damages whatever; and, secondly, the special damages resulting from breaking up his business.

*Johnson v. Un. Mar. & Fire Ins. Co.*, 127 Mass. 555, is the only case cited by counsel in support of the position, that plaintiff is not entitled to recover any compensation for the trespass committed. The action in that case was founded on a policy insuring against loss by fire the billiard-tables, bar and saloon fixtures and furniture, liquors, and cigars, which were kept and used by the insured in carrying on business without a license, contrary to law. It was held that the direct and immediate purpose of the contract of insurance being to protect and encourage an unlawful business, and to make it safe and profitable, the contract was illegal, and the policy never

attached. Whatever may be thought of the propriety of this extension and application of a well settled and salutary principle, it suffices to observe that the case cited is distinguishable from the present, in this, that the object of the suit in that case was the enforcement of a contract entered into for the protection of an unlawful traffic. When the plaintiff does not require the aid of an illegal transaction to maintain his case, a contract, though impeached as illegal on account of such transaction, is capable of enforcement. The illegality of a transaction does not affect or defeat a right of recovery independent thereof, though plaintiff may have participated therein. *Ware v. Curry*, 67 Ala. 274. Plaintiff's acquisition of the property was not offensive to law. By its purchase he acquired rights which originated in a lawful transaction, and are not founded or dependent on its use, and which can be established without the aid of such use. Its employment in carrying on an unlawful business does not operate to defeat a right of recovery based on the right of property legally acquired, and of which he can not be deprived except by "due process of law." Such right of property will be protected against an unauthorized and wrongful seizure, notwithstanding plaintiff may, at the time, be using it in carrying on an illegal business.

The right of plaintiff to recover special damages for the breaking up of his business is to be ascertained by a different test. In respect to this question, the court instructed the jury, that plaintiff was entitled to recover, in addition to the market value of the property seized and sold under the attachment, such damages, if any, as he sustained directly by reason of his business having been broken up ; and that, whilst he could not recover the net profits, the jury could consider the evidence tending to show that the business was profitable, for the purpose of ascertaining what damages the plaintiff sustained thereby. It may be conceded, that when the owner of property is wrongfully deprived of its use in carrying on a lawful traffic, his compensation may be augmented beyond its mere value by proof of special damages naturally and proximately caused by such deprivation. For the purpose of ascertaining the value of the business, and the damage sustained by deprivation of use of the property, the profits, when they can be made to appear with reasonable certainty, and shown to have been uniform for a considerable period of time under like circumstances and conditions, are admissible in evidence, not to be recovered as profits, but to be considered by the jury in determining the value of the business, and the damages sustained in consequence of having been broken up.—*Allison v. Chandler*, 11 Mich. 542 ; *Davenport v. Leiger*, 80 Ill. 542.

Counsel have referred to no case, and we have found none, bearing on the right of the plaintiff to recover the value of an unlawful business, in carrying on which the property taken was being used. Section 1323 of the Code declares: "All sales or contracts and agreements to sell or exchange spirituous, vinous or malt liquors are void, if the seller or party making the exchange has not a license authorizing him to engage in business as a retailer, or wholesale dealer." Under the statute, a sale or contract to sell spirituous or vinous liquors, made by a party having no license, is incapable of enforcement. By analogy, the same principle which governs suits founded on such sales or contracts to sell, is applicable, when the owner seeks to recover special damages for breaking up a business, the whole profits of which arise from illegal sales. In the contemplation of the law, an unlawful business has no value. In such case, the claim to such damages rests upon violations of the law, and plaintiff's right to recover them can not be established without the aid of the illegal business. Parties engaging in a business offensive to and prohibited by the law, must be regarded as having forfeited its protection, so far as respects such business. The plaintiff having been engaged in an illegal business, the court will not assist him to recover damages for the breaking up of such business produced by the deprivation of property employed in carrying it on.

It follows from the foregoing principles, that the demurrer to the special plea number 4 was properly sustained; but that the court erred in admitting evidence of the profits of the plaintiff's business, and in instructing the jury that he was entitled to recover the special damages claimed.

We discover no error in admitting in evidence the lease from McDonald to Black. It appears that this constituted an item of the property sold by Oppenheimer & Co. to plaintiff, and bears upon the *bona fides* of the sale. The lessor alone can take advantage of its assignment contrary to its express terms. Neither was there error in allowing plaintiff to prove the execution of the due-bill to White. This was a collateral matter, and proof of its execution was admissible without its production, or accounting for its absence.

Reversed and remanded.