# Eidge *v.* City of Bessemer,

*Violating Municipal Ordinance.*

(Decided June 30, 1909. Rehearing denied Dec. 16, 1909. 51 South. 246.)

1. *Intoxicating Liquors; Prohibition; Validity.*—It is within the constitutional exercise of the police power of the United States to prohibit by legislation the manufacture and sale of intoxicating liquors.

2. *Same; Possession and Rights of Property; Use as Offense.* —The mere possession of intoxicating liquors is not unlawful under Acts 1907, p. 71, 1st S. S.

3. *Constitutional Law; Police Power; Limitation.*—A statute which in fact *has* no real relation to the public health, morals or safety, and which invades any constitutional right is invalid, al-though purporting to have been enacted in the exercise of the po-lice power; and the same limitation applies to municipal ordi-nances enacted under the delegated police power as applies to statutes.

4. *Intoxicating Liquors; Municipal Regulation; Validity of Or-dinance; Possession of Liquors.*—While ordinances may be enacted to prevent the evasion of the state prohibition law by artifice, as for making it an offense to keep intoxicants in any place with the in-tent to sell them in violation of law, the ordinance in question is held not to have been enacted for such purposes, since it prohib-ited the keeping of intoxicants for any purpose in places innocent in themselves, and hence, the ordinance was void and not author-ized by section 1251, Code 1907.

(Simpson, Denson and McClellan, JJ., dissent.)

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

[Eidge v. City of Bessemer.]

W. S. Eidge was convicted of unlawfully keeping intoxicants on storage, and he appeals. Reversed and rendered.

The ordinance is as follows:

"Section 1. Be it enacted by the city council of Bessemer as follows: That it shall be unlawful and constitute a volation of this ordinance if any person, firm or corporation in the city of Bessemer have or keep on storage or deposit or have therein any vinous, spirituous or malt liquors, or intoxicating beverages which is a product of maltace or gencase as a substantial ingredient, in or at any place where any drinks or beverages are sold or kept for sale.

"Sec. 2. Be it further ordained by the city council of Bessemer that section 1 of this ordinance shall not apply to any druggist who is a licensed pharmacist, or who regularly employs a licensed pharmacist, or who sells pure alcohol for medicinal purposes only, or who sells grain alcohol to chemists and bacteriologists actually engaged in scientific work, and for such purposes only, and wine to be used for sacramental purposes only, or from using alcohol in the compounding prescriptions or other medicines the sale of which would not subject them to the payment of a special tax required of liquor dealers by the United States."

Section 3 provides a punishment for a violation.

The other matters sufficiently appear in the opinion.

T. T. HUEY and PINKNEY SCOTT, for appellant.—Demurrers 8, 12, 13, 14 and 15 should have been sustained. *W. Va. v. Gilman,* 6 L. R. A. 847; *City of B. v. Eidge,* in MS. The other demurrers should have been sustained.—*Norris v. Town of Oakman,* 138 Ala. 511.

BEN G. PERRY, and ESTES, JONES & WELCH, for appellee.—Under the police power the state has a right to

[Eidge v. City of Bessemer.]

regulate, restrain or prohibit the manufacture of intoxi-
cating liquors.—23 Cyc. 64; 17 A. & E. Ency. of Law,
206-7 and 287. This power may be delegated to munic-
ipalities.—23 Cyc. 66. So the state may authorize search
for and seizure of liquors.—23 Cyc. 87. So, it may pro-
hibit the having of liquor in one's possession.—23 Cyc.
174; *State v. Clark,* 28 N. H. 176. An ordinance may
be good in part and bad in part.—*Ex parte Cowart,* 9
South. 225. The ordinance in question was valid.—
*State v. Clark, supra; State v. Freeman,* 38 N. H. 426;
*Ex parte McLean,* 134 Cal. 110; *State v. Gearhardt,* 33
L. R. A. 313; *Monroe v. Lawrence,* 10 L. R. A. 520;
McQuillan's Mun. Ord., Sec. 477. The peace and good
order clause of a charter authorizes an ordinance on a
phase of the liquor question which is not covered by a
statute.—17 A. & E. Ency. of Law, 281-2-3; 96 Mich.
193; 53 Mich. 367; 45 N. J. L. 288; 4 Denio 341.

SAYRE, J.—The proceeding against the appellant
was had under an ordinance of the city of Bessemer
which will appear in the reporter's statement of the
case. It is at this day universally held that the prohi-
bition by the state of the manufacture and sale of intox-
icating liquors and beverages within its territory is a
constitutional exercise of the police power. The mul-
tiplication in recent years of statutes and court decis-
ions relating to the subject indicates a general and
growing determination to make prohibition effective
according to the popular intent. Mr. Black, a much-
quoted authority on the subject states the theory and
policy of such laws in the following language "The evil
to be avoided is the communication from one to another
of an article which may be injurious to the recipient,
or which, by its general use, may demoralize or harm
the whole community. It is not attempted to restrain

a man's private indulgence in drink; but that is because
the law deals not with the isolated individual, but with
men in their relation to each other."—Black, § 39. No
purpose to put intoxicating liquors outside the pale of
the law has ever yet been announced in statutory en-
actment. On the contrary, so far as the state is con-
cerned, the general prohibition law of November 23,
1907 (Acts Sp. Sess., 1907, p. 71), preserves by excep-
tion to retail druggists the right to sell alcohol and
wine for certain designated purposes, and necessarily
further recognizes the lawfulness of keeping intoxicat-
ing liquors and beverages by a provision that the act
shall not prohibit the serving of the liquors and bever-
ages mentioned therein in private residences in ordina-
ry social intercourse. In the *License Cases,* 5 How. 504,
12 L. Ed. 256, Taney, C. J., says: "Spirits and distilled
liquors are universally admitted to be subjects of own-
ership and property. In *Dorman v. State,* 34 Ala. 216,
in a judgment sustaining a local prohibition statute,
R. W. Walker, J., said: "The form in which the ques-
tion is stated assumes that spirituous liquors are prop-
erty. Of this there is no doubt, and we will not waste
words upon a proposition about which there can be no
reasonable dispute (*Wynehammer v. People*) 3 Kern.
(13 N. Y.) 384. All property is equally sacred to the
view of the Constitution. And hence we are not permit-
ted to listen to a suggestion that this particular proper-
ty is so pernicious in its influence upon society that the
best interests of the state would be promoted by its de-
struction. The description of property to which this act
refers has nothing to do with this controversy; for a stat-
ute, depriving a citizen of his property in spirituous liq-
uors, is just as clearly in conflict with the Constitution
as one which should take from him his lands, houses
and slaves." This decision was rendered in 1859. The

fact that an intervening vis major has overruled it in part does not affect its force or application to the case in hand. In *Ex parte Mayor of Florence*, 78 Ala. 419, it was said that "liquors are considered property, the subject of ownership, and entitled to protection, though, like other property, held subject to the condition that it shall not be so used as to injure the equal rights of others, or the interests of the community."

Counsel for appellant announce their inability to see any justice or common sense in a rule which would differentiate intoxicating liquors and beverages from burglars' tools, lottery tickets, infected clothing, or diseased animals. They argue that liquors are put by the statute outside the pale of law. Much the same argument was made in *Preston v. Drew*, 33 Me. 558, 54 Am. Dec. 639. In response, Shepley, C. J., said: "It is, however, insisted on argument that a person, by the common law, can no more acquire property in spirituous and intoxicating liquors than he can in obscene publications and prints. There is a clear and marked distinction between them. Such liquors may be applied to useful purposes. This is admitted in the act by its authorizing their sale for medical purposes. It is their abuse or misuse alone which occasions the mischief. Obscene publications and prints are in their very nature corrupting and productive only of evil. They are incapable of any use which is not corrupting and injurious to the moral sense." In *Lincoln v. Smith*, 27 Vt. 328, the court says: "The act does not declare that they (liquors) are not property, and there is no language which should receive a construction to forbid their being property. Though there is a command not to sell them, yet that cannot prevent a man from having a property in them for his own use, without any intention to sell them." In the case of *West Virginia v. Gilman*, 33 W. Va. 140,

10 S. E. 283, 6 L. R. A. 847, the defendant was charged under a statute which made it an offense to "solicit or receive orders for, or keep in his possession for another, spirituous liquors," etc. The court observing that the provision of the statute which prohibited the keeping in possession for another had no reference to the interest or purpose for which the liquors were kept, but denounced as a crime the simple fact that the liquor was kept in possession for another, however innocent the act or commendable the purpose, and announcing its opinion that, if it be a crime for a person to keep liquor in his possession for another, it would be equally so for him to keep it for himself, said: "The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it, or for some other improper purpose, can by no possibility injure or affect the health, morals, or safety of the public; and therefore the statute prohibiting such keeping in possession is not a legitimate exercise of the police power. It is an abridgment of the privileges and immunities of the citizen without any legal justification, and therefore void." And later on: "From what we have already said, it is apparent that the provision of the statute under consideration is not a fair and reasonable exercise of the police power, nor has it any reference to the prohibition or sale of liquors. It is simply an attempt to make the possession of liquors for any purpose a crime. A very different question would be presented if the act had made it unlawful for any person to keep intoxicating liquors in his possession, either for himself or for another, for the purpose of selling it, or as a device to evade the revenue laws."

In the case of *State v. Williams*, 146 N. C. 618, 61 S. E. 61, 17 L. R. A. (N. S.) 299, the court had under consideration a local prohibition statute for the county of

Burke, which, after declaring it to be unlawful to manu-
facture, sell, or otherwise dispose of liquors in the coun-
ty named, provided as follows: "It shall be further
unlawful for any person, except as a druggist, for med-
ical purposes, as aforesaid, to bring into said county of
Burke, in any day, more than one-half gallon of such
spirituous, vinous or malt liquors." The court announc-
ed its opinion in the following language: "Chapter 806
of the Laws of 1907, prohibiting any person from car-
rying into the county of Burke in any one day more than
one-half gallon of vinous, spirituous, or malt liquor, is
not a valid exercise of the police power, for that it undu-
ly restricts the right of the citizen to the use of his prop-
erty, without any intent to violate any prohibited act
in relation to it; that the carrying into the county of
Burke of the prohibited quantity has no reasonable,
substantial relation to the sale of liquors as prohibited
by law." We indulge one further quotation, from high
authority, as succinctly stating the limitation upon the
Legislature in the exercise of the police power: "It
does not at all follow that every statute enacted osten-
sibly for the promotion of these ends is to be accepted
as a legitimate exercise of the police power of the state.
There are, of necessity, limits beyond which legislation
cannot rightfully go. * * * If, therefore, a statute pur-
porting to have been enacted to protect the public
health, the public morals, or the public safety has no
real or substantial relation to these objects, or is a pal-
pable invasion of rights secured by the fundamental
law, it is the duty of the courts so to adjudge, and there-
by give effect to the Constitution."—*Mugler v. Kansas,*
123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. Such are
the limitations upon the Legislature in the exercise of
the police power which must be observed in the consid-
eration of this case. There is no attack here upon any

statutory enactment of the Legislature. But the prin-
ciple to be gathered from the cases considered applies
with equal force, of course, to municipal ordinances,
which must be enacted in pursuance of a delegated leg-
islative authority.

Municipal corporations in this state have power to
adopt ordinances, not inconsistent with the laws of the
state, to provide for the safety, preserve the health, pro-
mote the prosperity, and improve the morals, order,
comfort and convenience of the inhabitants.—Code
1907, § 1251. It must be conceded that they may pass
ordinances in accord with the general prohibition law
of the state, ordinances to prevent evasions thereof by
trick, artifice, or subterfuge, and ordinances making it
an offense to keep intoxicating liquors and beverages
in any place, public or private, with intent to sell or
dispose of them in violation of law; all such being in
consonance with the law and policy of the state, and
fairly implied in the broad grant of powers enumerated.
The ordinance in question does not make an offense
against the municipality of those acts which are de-
nounced by the law of the state; that is to say, it does
not prohibit the sale of intoxicating liquors, nor does
it create the separate and distinct offense of having or
keeping liquors and intoxicating beverages with the un-
lawful intent. It can be justified only, if at all, on the
ground that it sustains some reasonable relation to the
prohibition law in the way of preventing evasions of
that law by trick, artifice, or subterfuge under guise of
which that law is violated. But it has no such relation.
It undertakes to prohibit the keeping in any quantity
and for any purpose, however innocent, of intoxicating
liquors and beverages in places which are innocent in
themselves. Under the ordinance a keeping with inno-
cent purpose is as much an offense as a keeping with

purpose to violate the law.  The ordinance is no more to
be sustained than if it had said: "No man shall keep
for his own use intoxicating liquors or beverages in any
place where any drinks or beverages, though entirely
free of alcohol, are sold or kept for sale." Certainly,
if the keeping for one's own use, and with no purpose to
violate the law, may be prohibited in such places, the
prohibition against keeping without lawful purpose
may as well be extended to keeping at any place where
men are, many or few, with result that vinous, spiritu-
ous, and malt liquors must indeed be classified with
burglars' tools (the keeping of which with innocent pur-
pose, we remark, has never been prohibited), lottery
tickets, infected clothing, and diseased animals, and the
constitutional and legislative recognition of property
rights and personal liberty held for naught.

The ordinance under which the appellant was con-
victed is void, and the appellant must be discharged.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON and MAYFIELD., JJ.,
concur.

McCLELLAN, J. (dissenting).—This appeal invites
the judgment of this court upon the inquiry whether the
ordinance of the City of Bessemer, approved February
18, 1909, is a valid exercise of the police power.  A
majority of the court pronounce against its validity.  It
is indispensable to the determination of the validity of
statute or ordinance that construction thereof be first
taken.  What does the assailed enactment mean?  What
does it prescribe or provide?  What is its effect?—are
first questions in the delicate and highly important judi-
cial duty of deciding the validity vel non of legislative
expression.

[Eidge v. City of Bessemer.]

The first section of the ordinance under consideration reads: "Be it ordained by the city council of Bessemer as follows: That it shall be unlawful and constitute a violation of this ordinance if any person, firm or corporation in the city of Bessemer have or keep on storage or deposit or have therein any vinous, spirituous or malt liquors, or intoxicating beverages, or any beverage which is a product of maltace of genace as a substantial ingredient, in or at any place where any drinks or beverages are sold or kept for sale." Section 2 creates exceptions practically identical with those to be found in sections 2 and 3 of the general prohibition law, approved November 23, 1907 (Acts Sp. Sess. 1907, p. 71). Section 3 provides the penalty for a violation of the ordinance. The substance of the holding of the majority is that the ordinance is entirely void, because it is unwarrantably invasive of property rights, and because the limit in this direction of the police power is that the storage or deposit of the liquors or beverages described is that it is so stored or deposited with the intent to make illegal disposition thereof.

To neither of these conclusions can the writer give his approval. In my opinion both are unsound, and to sanction them is to impair and limit, without sufficient reason, the police power of the state itself, including, of course that of the municipalities created and empowered by the state. There can be no doubting the general right and power of a municipality in this state to ordain, under the power "to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience" of the inhabitants (Code 1907, § 1251), to the end that the prohibitory liquor laws of force in this state may be rendered more effective in such municipality. Accordingly, the question on the testing of this ordinance is whether the stated general

and legitimate power has been exceeded by the ordinance
under consideration. In short, the reasonableness vel
non of ordinance is the inquiry. Where that is the matter
for judicial decision, the general power in the premises
being possessed by the municipality, the presumption
is that the ordinance is reasonable, unless the contrary
appears from the enactment or is properly shown.—
*Van Hook v. Selma,* 70 Ala. 361, 365, 45 Am. Rep. 85;
McQuillan's Munic. Ord. §§ 186, 275, and authorities
in notes thereto. In the construction of ordinances "the
courts will give them a reasonable construction, and
will incline to sustain rather than to overthrow them,
and especially is this so where the question depends up-
on their being reasonable or otherwise. Thus, if by one
construction an ordinance will be valid, and by another
void, the courts will, if possible, adopt the former.—1
Dillon's Mun. Corp. § 420; *Orme v. Tuscumbia,* 150
Ala. 520, 43 South. 584; McQuillan, supra.

What does this ordinance prohibit? To me the re-
sponse to this question is apparent from the face of the
ordinance. A reading of it, obviating any necessity for
argument or elucidation, demonstrates, in my opinion,
that the whole purpose and effect thereof was and is to
inhibit the storage, deposit, or having of the defined liq-
uors "in or at any place where any drinks or beverages
are sold or kept for sale." The title of the ordinance, to
which reference may be had for purposes of interpreta-
tion, reinforces and emphasizes the correctness of this
construction. How it can be drawn from this ordinance
that an attempt is thereby made to penalize the posses-
sion, storage, or deposit of the condemned liquors at
other than places whereat or wherein drinks or bever-
ages are sold or kept for sale I am entirely unable to see.
How it can be said under this ordinance that a man is
prohibited from having the defined liquors in his home is

[*Eidge v. City of Bessemer.*]

wholly inexplicable to me. There is not a line or word in the ordinance, including the title, that tends to that meaning or effect. The first section does not employ the phrase "or have therein"; but it is obvious that "therein," as used, is a word of reference, and refers to the place 'in or at" which the liquors shall not be stored, or deposited, or possessed (had). This, it appears to me, is the meaning and effect to be read from the face of the ordinance; but, even if the meaning was equivocal, the application of the approved rules of favor and construction before stated compel the resolution of the matter to a construction that would sustain rather than overthrow the ordinance. We have, then, an ordinance forbidding the storage, deposit, or having in or at places where drinks or beverages are sold or are kept for sale the liquors described in the ordinance. Is this a permissible exercise of the police power? I feel no hesitancy in affirming that it is, and in so concluding I am not unmindful of the weight and deference due and attaching to the opposing view taken by my associates.

Taking authority first: An exhaustive investigation of text-books and reported decisions of other jurisdictions has been rewarded by a decision of the Supreme Court of New Hampshire, viz., *State v. Clark,* 28 N. H. 176. It is in immediate point, and was decided in 1854. So the proposition is not new. This case is also reported in 61 Am. Dec. 611, though the facts and briefs of counsel are not there as fully set out as in the original report of the case. The New Hampshire court has, in the *Clark Case,* to determine the validity vel non of the following ordinance: "No intoxicating liquors shall be used or kept in any refreshment saloon or restaurant within the city, for any purpose whatever." The argument against the validity of the ordinance was that set forth in the majority opinion in this case. It did

not prevail with that court. The opinion is by Chief Justice Gilchrist, and, so far as presently important, is as follows: "The city ordinance prohibits the using or keeping of intoxicating liquors in any refreshment saloon or restaurant only. It does not prohibit the using or keeping elsewhere, but it selects places of a certain class, and prohibits their use in such places. There is nothing unreasonable in such an exercise of the judgment of the city authorities. The ordinance does not profess to prohibit either the use or the sale of liquors altogether. From motives arising out of a regard for public policy or morals, it declares that liquor shall not be kept in such places. It is, in fact, a sumptuary law, which goes no further than almost any laws of this description; nor is it any more stringent than many other laws which are enacted from a regard to the public health and safety." The opinion then finds apt analogy in the statutes against the keeping of gunpowder in thickly populated districts, and also another in the inhibition of sales of liquors in two miles of houses of worship. It is evident that the license system prevailed at the time of these decisions; but that fact does not impair the value of the principle applied, nor its service as authority. The court then cites and quotes, as authority for the ruling made, the case of *Charleston v. Heisembrittle,* 2 McMul. (S. C.) 233, which aptly supports the court's holding. It was shown on the trial that Clark had an eating house, and that he had stored, for some weeks, under his restaurant, one or more casks of intoxicating liquors. The conviction of a violation of the quoted ordinance was affirmed as indicated; the court holding that the ordinance infracted no state or federal constitutional provision. *State v. Clark* has been at least twice recognized by the New Hampshire court as sound and worthy to be applied in

principle or analogy to other matters presented for decision. These two instances are the cases of *State v. Noyes,* 30 N. H. 279, decided in 1855, and *State v. Freeman,* 38 N. H. 426. The Georgia court, in *Bice v. State,* 109 Ga. 117, 34 S. E. 202, having then under consideration the constitutionality of an enactment prohibiting the carrying to a church or other place where people assemble for divine worship "liquor or intoxicating drink," declared the enactment valid, and affirmed Bice's conviction, notwithstanding he pleaded illness of his wife as the reason for his carrying the liquor within 200 years of a church and there having it in his conveyance. It is apparent that, if the majority view on this appeal is sound, the New Hampshire and Georgia courts egregiously erred in their respective conclusions, and, in consequence, unjustly infracted private rights.

What of the authorities affording the basis of the majority conclusion? In the first place, there is no sort of doubt that intoxicating liquors, even though being devoted to violations of penal statutes of the state, are property. Such was the ruling of this court in *Smith v. Dinkelspeil,* 91 Ala. 528, 8 South. 490, where the liquor owner was allowed to recover for trespass by a sheriff levying process. The court declared plaintiff's property in the liquors, and his right to damages, to a limited extent, notwithstanding they were being used as a vehicle for the violation of the statues against retailing without a license. The other decisions of this court cited in the majority are in accord, on the property right, with *Smith v. Dinkelspicl, supra.* While the existence of such a right is settled, it has been, of course, long adjudged to finality, and never now doubted any-where, that such right of property is subject to proper qualification by the exercise by the state of its police

power. And it has become the confirmed policy in our country to treat the traffic in intoxicants as in no sense an unimpairable right inhering in the ownership of such liquors.—23 Cyc. 89, and authorities in notes. The state may prohibit such traffic within it—regulate or restrain the traffic—and yet no property right is impaired. I have, hence, no difference with my Brothers on the abstract question of property right in liquors, whatever their use or intended use. To sustain this ordinance does not require a repudiation of the stated property right. Indeed, to declare the ordinance invalid is to exaggerate the property right in liquors so as to seriously—vitally, on this subject—impair the police power of the state. It is at least as unfortunate to unwarrantably curtail that power as it is to unjustly infract property rights.

If the writer is correct in the construction taken of the ordinance, it clearly appears that the decisions cited in the majority opinion are not authorities against the validity of this ordinance. They may be for another inquiry, but not the one presented by the Bessemer ordinance. *West Virginia v. Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847, deals with a statute wherein it was made, among other things, an offense to "keep in his possession for another" spirituous liquors, etc. The court condemned the statute as invasive of property rights. Whether the holding is sound or not, it bears no relation, in principle or analogy, to the Bessemer ordinance, where the prohibition was the storing, deposit, or possession of defined liquors in or at places of a certain specified class. In the *Gilman Case* the prohibition was against the possession of liquors generally, and under it every possession of liquors generally, everywhere, in the state, was a violation of the statute. The cases are obviously different. In *State v. Williams,*

146 N. C. 618, 61 S. E. 61, 17 L. R. A. (N. S.) 299, treating a statute prohibiting the importation, into Burke county, of more than one-half gallon of spirituous liquors in one day, the court declared the statute invalid. Whether well or illy supported that conclusion was or is, certainly such a latitudinous provision of law as was there dealt with is without kinship or resemblance to the ordinance here involved. No class of places whereat the public are served with beverages was defined in the statute. The inhibition was general, unlimited, and operated as well in a tenantless forest of the county of Burke as in any populous community within its confines. It penalized mere importation of an excessive quantity, over one-half gallon, in one day, without regard to the public character of the place of importation or of the favor of opportunity to evade, by trick or artifice, the prohibitory laws.

It is, of course, true that statutes and ordinances of the character now under consideration must bear a reasonable relation to the major object they were intended to conserve. They must reasonably tend to effect the prohibition, without unreasonably impairing property rights. But in deciding whether a given statute or ordinance had gone beyond reasonableness, as that is colored in decision by the relation of the mode adopted to the prohibition sought to be rendered more effective, less liable to evasion or artifice, the courts must of necessity be cautious that they do not substitute mere preference of judgment on a matter of legislative policy for the limited and sole right of review and revision. The wisdom of an enactment is not a proper subject of judicial consideration, nor is there reposed in the judiciary any power to revise the action of the legislative branch, except in respect of validity vel non thereof, and this upon grounds too well under-

stood and defined to need repetition. In my judgment, upon authority, the ordinance is valid. The reasonableness of the mode adopted in this ordinance for the effective enforcement of the general prohibitory laws of the state is clear, it seems to me, when the circumstances foreshadowed in the ordinance are considered in connection with the evident object thereof, to prevent evasions or opportunity for evasion of the general prohibitory laws. That attempts at the evasion of such laws may be anticipated and forestalled has been often recognized and sustained by the courts in dealing with laws pertaining to the liquor traffic. In the *Feibelman Case,* 130 Ala. 122, 30 South. 384, there is express declaration and approval of the legislative right to enact laws ancillary to the major purpose to be found in general prohibitory statutes. The underlying principle is that the Legislature, having the right and power to prohibit the traffic in liquors, has also, and necessarily, the power and right to render the major purpose effective by removing and inhibiting the opportunity for evasion by trick, artifice, or design. The greater includes the lesser. The relation between the ancillary prohibition, its purpose and effect, and the major object, must, of course, be reasonable, and appear from the ancillary mode provided to the end stated.

The circumstances indicated by this ordinance demonstrate, as I view it, not only the reasonableness of the mode therein provided, but also that the council of Bessemer very naturally and reasonably anticipated, in so ordaining, an artful and hard to detect method of evasion of the major law. The place of sale of ostensibly innocent beverages could, it was thought, readily afford a cloak for an illicit traffic in prohibited liquors. The vendor, "in or at" his place, was conceived · to be favorably situated

to serve the forbidden, under the guise or subter-
fuge of serving a harmless and uncondemned, beverage
The receptacle for the innocent and that for the prohib-
ited liquors might be readily interchanged, so as to
minimize the hazard of detection by the law's agents, if
both might be lawfully stored, deposited, or had in the
place where innocent drinks or beverages could be sold.
Indeed,. it was reasonably possible to be anticipated
that false labels might be used as a subterfuge to con-
ceal the character of beverage being sold. If the hav-
ing of the prohibited liquors was permitted in such
places as the ordinance described, then opportunity to
evaded the prohibition statute would be afforded. The ob-
ject and effect of the ordinance was to take that favor of
circumstance out of the equation. Ingenuity has, as is
common knowledge, a most inviting field in the evasion
of the liquor laws. That it is availed of, or sought to be,
appears from the reported cases of this court, as well
as elsewhere.—Black on Intox. Liquors, § 405. No fa-
vor has been extended that exercise of ingenuity by the
courts of the state. They have steadily sought the sub-
stance behind the shadow; and, if' evasion, by trick,
artifice, or design, covered the reality, the law was ap-
plied to the guilty actor, without reference to the cun-
ningness of the design or the subtleness with which he
concealed his unlawful purpose. This suggests the re-
lation of the ancillary prohibitions, spoken of in the
Feibelman Case, supra, and gives legal sanction to all
reasonably related efforts to effect the enforcement of
the major law, by anticipating the evasion that may be
attempted.

It has been said, in respect to this ordinance, that it
prohibits any one, in addition to the keeper of the de-
scribed place, from having therein any quantity of the
liquors forbidden by the ordinance. If that is a proper

construction of the ordinance, no good reason occurs to
the writer why any person may not be forbidden to have
while in or to carry into the places where drink or bev-
erages are sold the liquors within the ban of the ordi-
nance. The same reasons in general that in my opinion
clearly justify the inhibition against the proprietor of
such place support the reasonableness, and therefore the
validity, of the phase of the ordinance forbidding any
person, whatever his mission in entering the place, from
having therein the condemned liquors. It penalizes a
purchaser of the prohibited liquors, to whom a delivery
thereof in the described place is made. It operates to
restrain one from accepting a delivery of such liquors
therein. It, if observed, would take from the traffic,
broadly condemned in this state, one of the parties, viz.,
the buyer or receiptor, necessary to effect the elimina-
tion of the evil thus stated by Mr. Black at section 39:
"The evil to be avoided is the communication from one
to another of an article which may be injurious to the
recipient, or which, by its general use, may demoralize
or harm the whole community. It is not attempted to
restrain a man's private indulgence in drink; but that
is because law deals, not with the isolated individual,
but with men in their relation to each other." The or-
dinance says to all persons: You shall not have in the
place described any spirituous, etc., liquors. Its pur-
view comprehends those on both sides of the counter, the
deliverer and the receiptor, and prohibits one as well
as the other from the act described. In short, it at-
tempts to forestall evasions of the major laws by re-
straining all who may contribute to that evasion.

It is no argument against the validity of this phase
of the ordinance that a well-intentioned individual, en-
tering such a place as the ordinance defines, with spir-
ituous, etc., liquors on his person at the time, would

[Eidge v. City of Bessemer.]

violate the ordinance by so doing. If the municipality or
the state itself may forbid, as in right each may do, the
storage or deposit or keeping of liquors in the specified
places, it cannot be that a person of the class above de-
scribed would be free from the effect of the state's pro-
hibiting power. The line between the innocent visitor or
patron, who also has on his person some of the prohibit-
ed liquor, and the individual not so innocent, could not
be drawn in practical operation; and hence, as in many
cases, the mere right of innocence must yield to the pub-
lic right to restrain the vicious, who might seek to evade
the law by the same abstract conduct as that pursued
by the innocent. The law must operate by general class-
es, and because the innocent may be disturbed in their
courses or conduct by a rule intended for application to
the wrong bent has never, I think, been thought suffi-
cient to deny the proper authority the right to restrain
along general and comprehensive lines. The maxim
"Salus populi suprema lex," is founded on the implied
consent of the individual to yield of his rights in the
interest and in furtherance of the general welfare. The
extreme case urged in argument against this phase of
the ordinance must, if it ever occurs, go under the or-
dinance as a contribution within the maxim quoted.
That phase may cover conditions not innocent, as in the
hypothesized case, and therefore the extreme case
should not avail to deny the state or the municipality
the right to reach those not so innocent, though pursu-
ing the course of the innocent. It would be easy for the
law-abiding to avoid carrying liquor into a place subject
to the law's suspicion as a convenient occasion and place
for evasion.

But, if it be granted (for the argument) that the pro-
vision of the ordinance expressed in the phase "or have
therein" is invalid, then there can be no sort of doubt

that such invalid part may be eliminated, and the prohibition against the storage or deposit of the forbidden liquors in the defined places retained as a valid and enforceable law. In *State v. Davis*, 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23, the rule was declared that, if the elimination of parts of an act "would leave a law 'complete within itself, sensible, capable of being executed and wholly independent of that which is rejected,' the statute will stand and be enforced. * * *"—Dillon, § 421, and notes; *Ex parte City of Florence*, 78 Ala. 419, 425. That the inhibition against having "therein" any of the condemned liquors is distinct and independent, and hence separable, from the prohibition with respect to storage or deposit of liquors in the described places is obvious. The argument employed in the *Davis Case*, *supra*, is pertinent on this subject. It will not be repeated. It follows that, even with the concession to the invalidity of the possession "or have therein," the entire ordinance should not be annulled. And likewise as to the prohibition of liquors or beverages the product of "maltace" or "gencase." If this provision of the ordinance is not saved by the ruling on the same subject in *Elder's Case*, 162 Ala. 41, 50 South. 370, the principal treated and applied in the *Davis Case* denies that invalid part, independent and separable, of the act the effect to annul the whole act. In my opinion, the conclusion in this particular, in the *Elder Case*, is authority for holding the ordinance valid.

This state has adopted the policy of prohibiting the traffic in intoxicants. That power it rightfully has. Having that power, it has also and necessarily the ancillary power to give effect to the major object and policy of the state in this field of exercise of the police power. I cannot agree to curtail the ancillary power to the major end, and thereby largely paralyze the arm of

the state in its efforts to prevent the evasions of the major law.  To do so is a serious matter, involving the dignity of the state, respect for its laws, and the enforcement thereof.  The importance of the question has promoted the length of this opinion, and much might still be added, which, in my judgment, tends to indicate the unsoundness of the prevailing view.

Justice Denson concurs in the foregoing opinion, and in the conclusion that the ordinance is valid.

SIMPSON, J.—I recognize the force of the argument of our Brother Sayre, J.; but after a careful consideration of the question I am not able to concur.  While it is true that spirituous liquors constitute property, yet it does not necessarily follow that the Legislature may not make regulations prescribing when and how they may be kept.

Without adverting to the fact that all courts recognize the principal that spirituous liquors belong to a class of property, as to which many regulations and prohibitions may be made, which would not be allowable as to other property, yet as to property generally the Legislature has the right to make police regulations which are reasonable and suggested by the nature of the property and the evils intended to be remedied, and the courts will not declare such legislation invalid unless it is an unreasonable exercise of legislative discretion.

As a general proposition a proprietor has a right to employ a female, and the female has a right to earn her livelihood, yet it is held that an act prohibiting proprietors of places where malt, etc., liquors are sold, to employ a female to serve customers, is valid, and it matters not how orderly and proper the place is, or how virtuous the female may be.—*Bergman v. Cleveland*, 35

Ohio St. 651. So, also, have been sustained ordinances prohibiting persons from offering for sale food, intended for daily consumption, at any place except at the public market house, although the right to own property necessarily carries with it the right to sell it when and where the owner may choose.—*Town of Crowley v. Rucker,* 107 La. 213, 31 South. 629. Likewise an act requiring laundries to desist from work between ten o'clock at night and 6 o'clock in the morning is held valid; and the Supreme Court of the United States says: "However broad the right of every one to follow such calling and employ his time as he may judge most conducive to his interests, it must be exercised subject to such general rules as are adopted by society for the common welfare. All sorts of restrictions are imposed upon the actions of men nothwithstanding the liberty which is guaranteed to each. It is liberty regulated by just and impartial laws.—*Soon Hing v. Crowley,* 113 U. S. 703, 709, 5 Sup. Ct. 730, 734, 28 L. Ed. 1145.

The same court, in sustaining a law prohibiting selling or buying "options" on commodities to be delivered in the future, says "Is it true that the Legislature is without power to forbid or suppress a particular kind of business, where such business, properly and honestly conducted, may not in itself be immoral? We think not. * * * If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the state thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the funda-

mental law."—*Booth v. Illinois,* 184 U. S. 425, 429, 22
Sup. Ct. 425, 427, (46 L. Ed. 623). It has never been
doubted that ordinances prohibiting the keeping of ten-
pin alleys, or billiard and pool tables, at places where
spirituous liquors are sold, are valid, though those
games are perfectly harmless in themselves.

Our constitution guarantees to every one the right to
bear arms in defense of person or property, yet statutes
prohibiting the carrying of a pistol concealed about the
person have long been recognized as constitutional,
though many persons might carry it, in that way, really
for their own protection, and without any purpose or
probability of violating the law otherwise. Cotton in
the seed is certainly valuable property, and it follows
that the right of ownership carried with it the right
to sell it and to transport it, at the owner's pleasure;
yet this court has sustained as constitutional an act to
prohibit the selling of cotton in the seed, and also pro-
hibiting the transportation of the same after sunset and
before sunrise.—Acts 1878-79, p. 206; *Davis v. State,* 68
Ala. 58, 44 Am. Rep. 128; *Mangan v. State,* 76 Ala.
60.

The theory of all these acts is that, though the mat-
ters referred to are legitimate in and of themselves, yet
experience has shown that, under the circumstances
provided, the acts prohibited have been found to tend
to a violation of the law. The act now under consider-
ation is to prevent the evasion of the prohibition law,
and I think it is a reasonable exercise of the police pow-
er of the state. It is a part of the history of all govern-
ments that the citizen must surrender some of his nat-
ural rights for the good of others.