JAMES CLARK DISTILLING CO. OF CUMBERLAND, MD., v. WESTERN MARYLAND RY. CO.

(District Court, D. Maryland.    December 18, 1914.    On Reargument, January 23, 1915.)

1. JUDGMENT ⬚668—FOREIGN STATE—DECREE—CONCLUSIVENESS.
    Where, in a suit to compel a railroad company to transport liquor from Maryland into West Virginia, contrary to a decree which West Virginia had obtained against the railroad company in one of its own courts, the latter state voluntarily appeared and became a party, it alone could complain of any disobedience of the decree, and would be bound by whatever proceedings were properly taken in the suit.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1181–1183, 1188; Dec. Dig. ⬚668.]

2. INTOXICATING LIQUORS ⬚147—WRONGFUL SALE—STATUTES—CONSTRUCTION.
    Act W. Va. July 1, 1914, § 3, regulating the sale of liquors, provides that, in case of a sale in which a shipment or delivery of liquors is made by a common or other carrier, the sale shall be deemed to have been made in the county wherein the delivery is made by the carrier to the consignee his agent, or employer. Held, that such provision could not be construed as making illegal anything not otherwise prohibited, and did not forbid the sale of liquors in Maryland to be transported to West Virginia, nor could it validly change a completed sale in Maryland to one made in West Virginia.
    [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 162; Dec. Dig. ⬚147.]

3. INTOXICATING LIQUORS ⬚132—TRANSPORTATION—INTERSTATE COMMERCE.
    Liquor brought into West Virginia from Maryland for the exclusive use of the consignee is not intended by any one interested therein to be received, possessed, or used in violation of any law of West Virginia.
    [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 141; Dec. Dig. ⬚132.]

4. INTOXICATING LIQUORS ⬚146—SALES—SOLICITATION.
    Mailing of letters in Maryland, where liquor may be properly sold, soliciting orders therefor in dry counties in West Virginia, is not prohibited by Act W. Va. July 1, 1914, regulating the sale of liquor in that state.
    [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 159, 160, 163; Dec. Dig. ⬚146.]

5. COURTS ⬚366—FEDERAL COURTS—STATE STATUTES—CONSTRUCTION.
    While federal courts are bound to accept the construction placed on state statutes by the courts of the state, they are not required to accept

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the construction of a state court of first instance, construing a state statute on an ex parte application for an injunction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ☞366.]

6. INTOXICATING LIQUORS ☞6—REGULATION—PURCHASE AND MANUFACTURE.
A state may constitutionally prohibit its citizens from buying or making intoxicating liquors within the state.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 4; Dec. Dig. ☞6.]

7. INTOXICATING LIQUORS ☞138 — COMMON CARRIER — TRANSPORTATION OF LIQUORS.
A common carrier may be compelled to receive intoxicating liquor for transportation from Maryland into West Virginia, provided the liquor is intended solely for the personal use of the consignee, though orders for the liquor have been solicited by letters mailed at points without the state; but the carrier may not legally accept for shipment, or deliver in West Virginia, liquors which are intended by any person interested therein to be used in any way forbidden by the laws of the state.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 148; Dec. Dig. ☞138.]

8. INTOXICATING LIQUORS ☞138—TRANSPORTATION—DUTY OF CARRIER.
Where intoxicating liquors are offered to a carrier for transportation from Maryland into West Virginia, for the alleged personal use of the consignee, the carrier is not bound at his peril to make sure that the liquors are not intended to be used contrary to the laws of such state, but is only required to act in good faith in a bona fide effort to prevent its instrumentalities being used to aid a violation of the law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 148; Dec. Dig. ☞138.]

In Equity. Suit by the James Clark Distilling Company of Cumberland, Md., against the Western Maryland Railway Company. Decree for complainant.

J. Philip Roman and Walter C. Capper, both of Cumberland, Md., and Lawrence Maxwell, of Cincinnati, Ohio, for plaintiffs.

Benjamin A. Richmond, of Cumberland, Md., for defendant.

John Philip Hill, of Baltimore, Md., for American Express Co.

Fred O. Blue, Commissioner of Prohibition, of Charleston, W. Va., for the state of West Virginia.

ROSE, District Judge. Both the plaintiff and the defendant are Maryland corporations. The interposition of this court is invoked for the protection of rights said to be given by the Constitution and laws of the United States. The defendant operates a railroad between Cumberland, Md., and various stations in the counties of Mineral, Grant and Tucker, W. Va., among them being the town of Parsons. On July 1, 1914, there went into effect an act of the Legislature of the latter state commonly known as the "Yost Law." It prohibits, except for medicinal, pharmaceutical, scientific, mechanical, or sacramental purposes, the manufacture, sale, or offer for sale of intoxicants and the soliciting or receiving of orders for them. It contains many provisions intended to make evasion difficult and dangerous. Penalties are imposed on those who by themselves or in association

with others maintain any clubhouse or other place in which liquor is received or kept for the purpose of use, gift, barter, or sale as a beverage, or for distribution or division among the members of any club or association.   Section 8 provides in part that:

"If any person shall advertise or give notice by signs, bill board, newspapers, periodicals or otherwise * * * of the sale or keeping for sale of liquors, or shall circulate or distribute any price-lists, circulars or order blanks advertising liquors, or publish any newspaper, magazine, periodical or other written or printed papers, in which such advertisements or notices are given, or shall permit any such notices, or any advertisement of liquors (including bill boards) to be posted upon his premises, or premises under his control, or shall permit the same to so remain upon such premises, shall be guilty of a misdemeanor."

Another section requires common carriers to keep books in which shall be entered the name of every person to whom liquors are shipped and the amount and kind thereof, together with the date of delivery and by and to whom delivered.   Every consignee must in person sign his name to such record.

Within a few weeks after the act went into effect the state thought it had reason to believe that systematic attempts to evade its provisions were being made by various residents of the counties named. It accordingly, as authorized by law, sought the aid of its circuit court having jurisdiction in them.   It filed a bill against the company, which is the defendant in this cause.   It alleged various facts which strongly tended to show that the defendant was delivering great quantities of liquor to many different persons in the town of Thomas and its neighborhood, and that a number of these shipments were of such quantities as to make it highly improbable that they could have been intended solely for the personal use of the consignees.   It charged that much of this liquor had been shipped to boarding bosses and other persons, to be, in violation of law, by them distributed to their boarders or associates.   It said that the defendant was accepting shipments and making deliveries of liquors without exercising due care to ascertain that they were not intended to be used in violation of its laws.   In accordance with the prayer of this bill an ex parte injunction was issued, which, among other things, enjoined the defendant from accepting for transportation or delivery to any one in the three counties in question any liquors, unless it had first ascertained—

"by acting in good faith, with due diligence and caution, that such liquors were ordered by the consignees for their lawful personal use without solicitation on the part of the consignors, and that such liquors were offered by the consignors for acceptance and delivery thereof by the said defendant to the consignees for their lawful personal use without intention by any person interested therein to be received, possessed, sold or in any manner used in violation of any law of the said state."

It was further enjoined from delivering to any person in the counties named any liquors procured by the consignee, by him and those associated with him—

"to be received or kept for the purpose of use or gift as a beverage or for distribution or division among himself and those associating with him, at any place which is kept or maintained by himself or by associating with

others, or which he by himself or by association with others in any manner aids, assists or abets in keeping or maintaining."

The decree, moreover, prohibited delivery to any person—

"unless the consignee signs the defendant's liquor record in his own proper person and not in the name of some fictitious person, or otherwise, and then only when the consignee has ordered the same for his personal lawful use with no intention that the liquor so delivered is to be received, possessed, sold or in any manner used in said state of West Virginia in violation of any law thereof."

So soon as this injunction was served upon the defendant, it determined to refuse, and thereafter did refuse, to receive any shipments of liquor for transportation to any station in those counties. It says that if it attempted, before accepting such shipments or before making such deliveries, to obtain the information required by the order of the West Virginia court, it would be compelled to employ an army of detectives and investigators, which would cost it far more than the gross freight it would receive for the transportation of the merchandise in question.

The plaintiff is a liquor dealer in Cumberland. It has a large and profitable trade in the portion of West Virginia included within those counties. It is also one of the concerns which the state of West Virginia in its bill of complaint in its own court specially mentioned as shipping liquors in large quantities to the town of Thomas and its neighborhood. Both before and after the going into effect of the Yost Act it has through the mails systematically distributed price lists and solicited orders from residents of that part of the state. With its price lists and soliciting circulars it sent out order blanks to be filled up and signed by prospective purchasers. In these blanks there is a clause stating that the liquor is intended for the personal use of the individual giving the order.

In August, 1914, one Floyd Rosier, a resident of the town of Parsons, by one of these order blanks directed the shipment to him by the plaintiff of four quarts of alcohol and sent a post office money order for $4 in payment therefor. The plaintiff packed the goods for shipment and tendered them to the defendant for transportation. In accordance with the determination at which, as before stated, it had arrived, the defendant refused to receive or transport the package and announced that it would refuse to accept any intoxicants for delivery in the territory in which the injunction was operative. The plaintiff thereupon instituted these proceedings. It seeks a mandatory injunction to compel the defendant to transport all liquors ordered, without plaintiff's solicitation, by Rosier and other customers for their own personal use. At its request, and with the consent of all parties, the state of West Virginia has been made a party to the suit.

Only two questions in this case interest the defendant. It fears that it may be commanded to do something for the doing of which the state court will punish it, and it objects to spending a large sum of money to keep other people from evading the liquor laws of West Virginia.

[1] The voluntary appearance of the state disposes of the former. It was the plaintiff in its own courts. It alone can complain of any disobedience of the decree there passed. It has come into this proceeding and will be bound by whatever is properly done herein.

The expenses to which the defendant may lawfully be put in connection with the shipment and delivery of intoxicants in West Virginia depends upon the degree of care which it may be required to exercise to prevent others using its facilities to break the laws of the state. The controversy between the plaintiff and the state is more far-reaching and will be first passed upon.

At the hearing the counsel for the state argued, first, that any shipment into West Virginia by a seller to a buyer of intoxicants was prohibited; second, that, even if that was not so, any such shipment was forbidden if the seller had by mail or otherwise solicited the order for it.

[2] The first contention was based upon the construction which the state put upon a clause of section 3 of the act, which reads:

"In case of a sale in which a shipment or delivery of such liquors is made by a common or other carrier, the sale thereof shall be deemed to be made in the county wherein the delivery thereof is made by such carrier to the consignee, his agent or employé."

The sale of intoxicants in West Virginia is prohibited. Liquor which a resident of West Virginia orders from out of the state is usually delivered to him by a common carrier. If he has bought it, the state says that the law declares that the sale has taken place in the county in which he lives.

Such an interpretation of the statute cannot be accepted. The provision quoted does not make illegal anything not otherwise forbidden. All that it does or was intended to do was to make certain the county in which those who had offended against its other provisions should be prosecuted. The state could not forbid the sale of liquors in Maryland, nor could it say that what by the general law was a completed sale in Maryland should be held to have been made in West Virginia. American Express Co. v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417.

If it had wished to keep citizens of West Virginia from obtaining liquor even for their own personal use from outside the state, and had the constitutional right to do so, it might have made it an offense for any one to order them or to receive or have them. There is nothing in the act, however, to indicate that the state had any objection to any one obtaining liquor for his own personal use provided he can do so otherwise than by, within the state, buying or making it.

[3] It follows that liquor brought into West Virginia for the exclusive personal use of the consignee is not intended by any one interested therein to be received, possessed, or used in violation of any law of that state.

[4] Does the fact that such order has been solicited through the mails by a nonresident dealer in liquors make the transaction which would otherwise have been lawful illegal? One may solicit in writing, as well as by word of mouth. Such a solicitation is made at the place

at which in pursuance of the intent of the person making it the written communication is delivered to the person solicited. United States v. Thayer, 209 U. S. 39, 28 Sup. Ct. 426, 52 L. Ed. 673.

That the letter is mailed in another state from that at which it is to be delivered does not necessarily prevent the latter state from punishing the sender if it can catch him. In re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, 34 L. Ed. 514.

It may be that the right to inflict punishment in such cases may be exercised only when the letter is sent in furtherance of something which the common moral sense of mankind regards as criminal, and does not exist when the thing, aided by the letter, would be in itself indifferent had it not been made criminal by local legislation. Adams v. People, 1 N. Y. 175.

Into these niceties it is unnecessary to go. Judge Keller has held that the Yost Act, reasonably construed, does not attempt to prohibit the solicitation of liquor orders by means of communications mailed from without the state. West Virginia v. Adams Express Co. et al., 219 Fed. 331.

It seems only fair to presume that if the Legislature had wished to deal with that phase of the problem it would have used language which would have made its purpose plain. I therefore agree that the West Virginia law has not attempted to prohibit such method of soliciting. Whether it has a constitutional right to do so if it chooses need not be here decided, and I intimate no opinion as to it.

[5] The federal courts are, of course, bound by the construction which those of the state put upon its own statutes. I do not understand, however, that such rule requires national tribunals to accept the issue by a state court of first instance of an injunction upon an ex parte application as an authoritative construction of the applicable state legislation.

The defendant in this case makes no objection to the requirement that it shall keep certain kinds of delivery books. It is consequently unnecessary to inquire whether the somewhat narrow construction put upon the Webb-Kenyon Act by a number of state courts of last resort, in such cases as Adams Express Co. v. Commonwealth, 154 Ky. 462, 157 S. W. 908, 48 L. R. A. (N. S.) 342, Palmer v. Southern Express Co., 129 Tenn. 116, 165 S. W. 236, Van Winkle v. State (Del.) 91 Atl. 385, or that in effect given to it by Judge Bean in United States v. Oregon Washington Rail Navigation Co. (D. C.) 210 Fed. 378, is the sounder interpretation of the intentions of the Congress which passed it. It would be even more beside the mark to pass upon the soundness of plaintiff's contention that a state cannot validly prohibit the possession by an individual of intoxicants for his own personal use. A number of courts of high rank have so held. State v. Gilman, 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847; Commonwealth v. Campbell, 133 Ky. 50, 117 S. W. 383, 24 L. R. A. (N. S.) 172, 19 Ann. Cas. 159; Eidge v. City of Bessemer, 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394.

[6] On the other hand, it is clearly settled that he may be constitutionally prohibited from either buying or making it within the state.

As every state in the Union has the like right, and as it is at least possible that Congress may validly prohibit its importation from abroad, the right, if it exists, may be lawfully made almost impossible of exercise.

[7] In this case nothing need be decided other than that the defendant as a common carrier is bound to receive for shipment, and to transport and deliver in West Virginia, such liquors as are intended solely for the personal use of the consignee, even though the orders for them had been solicited by letters mailed at points outside the state. It has no right to accept for shipment, or to deliver in West Virginia, liquors which are intended by any person interested therein to be used in any way forbidden by the law of that state.

[8] It is not bound at its peril to make sure that no liquor transported by it is intended to be used contrary to the state law. It need not create or maintain any special staff of investigators or detectives to aid it in determining such questions. It must, however, act in good faith. Its agents and employés who handle such shipments for it must keep their eyes open, and must exercise common sense to prevent it and its instrumentalities being used as aids in violation of the law.

A decree may be drawn in accordance with the conclusions herein stated.

## On Reargument.

A decree as indicated in the foregoing opinion was entered on December 24, 1914. On the 13th of January, 1915, the Circuit Court of Appeals for the Fourth Circuit handed down its opinion in State of West Virginia v. Adams Express Company, 219 Fed. 794, 135 C. C. A. 464. Under the views therein expressed, the plaintiff in this case was not entitled to the relief granted it. Judge Rose of his own motion directed a reargument, which was had on the 23d of January, 1915, as a result of which the plaintiff's bill was dismissed, and in open court an appeal was prayed to the Supreme Court of the United States.