## DANIEL SULLIVAN

### *v.*

## THE CITY OF ONEIDA.

1. CITY CHARTER—*ordinances—liquor nuisance.* Where a city charter authorized the common council to declare the selling, giving away, or the keeping on hand for sale any spirituous or intoxicating liquors, etc., in the city, a nuisance, it does not authorize an ordinance making it an offense for any person within the city to have in his or her possession any intoxicating liquors, etc. The ordinance exceeds the power in the charter as it declares the possession, without the intent to sell, an offense.

2. The charter only contemplates a search in the event that liquors were in the possession of some person for sale within the city. The ordinance authorizes the search and seizure if the liquors were kept in the city, whether the intention was to sell them or ship them for sale elsewhere. Such an ordinance might interfere with general commerce, but when confined to the ordinary traffic between the city and its neighboring towns and cities, it is unjust and illegal, and the ordinance is *ultra vires* and void.

3. CITY ORDINANCES—*presumption of innocence.* It is no answer to say that the person whose liquor is seized may prove his innocence—may show the purpose to be lawful. The law ought not to be guilty of such harshness as to require a man to prove his innocence where there is not even a suspicion of his guilt.

4. LEGISLATIVE POWER—*to restrain sale of spirits.* It has often been decided that the general assembly may prohibit the retail of intoxicating liquors. But this charter has gone far beyond that, as it authorizes the council to license, regulate and tax the sale of such liquors; to declare the sale, and keeping on hand for sale, a nuisance; to provide for its summary abatement and suppression; and it empowers the police magistrate to issue his warrant to search the premises of persons suspected of selling. It makes the mere possession *prima facie* evidence of unlawful intent, and, without satisfactory explanation, evidence of sale and keeping on hand for sale.

5. CITY ORDINANCE. The ordinance authorizes the police magistrate, on complaint that any person has such liquor for sale, more than one gallon, to issue his warrant for the search of his dwelling house, and if liquors are found they shall be seized, and the person arrested, and both brought before the magistrate, who shall at once proceed to try the person, and if he should not offer a satisfactory explanation and show that he had the liquors for a lawful purpose, he shall be fined, and ordered to the common jail until fine and costs are paid, and the liquors ordered sold on execution and the proceeds applied to the payment of the fine and costs.

6. The ordinance is objectionable because, while it professes to prevent the sale of liquors because they are declared to be a nuisance and should be abated, it requires the liquors to be sold by the officer.

7. SAME—*objectionable.* Another objection is, that both the charter and ordinance authorize the seizure of all liquors found, without reference to quantity; whilst the ordinance only authorizes a fine of $100, it authorizes a seizure of liquors to the value, it may be, of thousands of dollars, which would be ordered to be sold, as is supposed, to satisfy the fine, as it will not be presumed the sale would be ordered merely for the exercise of unusual or arbitrary power. Again, the ordinance does not require the surplus to be returned to the owner.

8. JUSTICE OF THE PEACE—*jurisdiction.* Whilst a justice of the peace could only render a fine not exceeding $100, yet, under this charter and ordinance, he is authorized to adjudicate to an unlimited amount of property, and this seizure is unreasonable and in violation of the Declaration of Rights.

9. CONSTITUTIONAL PROTECTION. Every man has the right to acquire and protect his property; to be secure against unreasonable searches and seizures; to a fair trial before he can be deprived of life, liberty or property; and in all criminal prosecutions the right to be heard, to demand the nature and cause of the accusation against him, and to meet witnesses face to face. Under this ordinance a person may be deprived of his property without notice; condemned without witnesses; his premises subjected to unreasonable search, and his property seized to an unlimited amount.

10. PROPERTY. Spirituous liquors, ale or beer, are property; they are chattels; are articles of consumption and of commerce; and the ordinance recognizes them as property and directs their sale, and permits druggists to keep them. Their abuse may be restrained and punishment inflicted on those who sell them to the injury of others. As well as other chattels, they may come under the designation of a nuisance, and to a certain extent lose their quality of property, but they can not do so *per se.*

11. LEGISLATIVE POWER—*its exercise.* The legislature may change the presumptions of guilt; it may, to a certain extent, declare acts evidence

of an unlawful intent which had before been innocent; it may declare possession of property, on account of its dangerous character, unlawful, but such laws must always have proper safeguards for the security of private rights.

12. It is within the power of the legislature to declare the possession of spirituous liquors, for the purpose of sale, a *quasi* nuisance, and to provide a well guarded system of suppression of its use; and that possession shall be *prima facie* evidence of unlawful intent. But in making such changes the utmost care should be observed so as to preserve the sacredness of the domicil.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. CRAIG & HARVEY, for the appellant.

Messrs. WILLOUGHBY & GRANT, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

We propose only to consider the character and validity of the section of the charter, and the ordinances read in evidence.

The warrant issued commanded the officer to search the dwelling and out-houses of the accused, and if spirituous liquors were found to seize the same and bring them before the magistrate.

The ordinance greatly transcends the power granted to the council.

The charter empowered the council to declare the selling, giving away, or the keeping on hand for sale, of any spirituous or intoxicating liquors, ale, beer, or any kind of fermented liquors *within the city*, a nuisance.

The necessary import and plain construction is, that the liquors must be kept to sell within the city. It could never have been intended to prohibit the possession of liquors within the city, designed for sale elsewhere.

The corresponding sections of the ordinance are:

"*Sec.* 3. If any person shall, within the city, keep on hand for sale, any spirituous liquors," etc.

"*Sec.* 4. Whenever complaint, on oath, shall be made before the police magistrate that any person within the city has, in his, her or their possession, any intoxicating liquors," etc.

It will be seen at a glance that the ordinance exceeds the power conferred. Possession within the city, without any intention of selling therein, is made the offense.

There is as great a divergence between the charter and ordinance in regard to the search warrant.

The charter only contemplated a search in the event that liquors were in the possession of some person, for sale within the city.

The ordinance plainly authorized the search and seizure if the liquors were kept in the city, whether the intention was to sell them, or ship them and sell elsewhere.

The commission man might have, upon storage, the liquors of his correspondent, for shipment to Chicago or St. Louis, and for sale there, and yet his business house is not secure from an unreasonable search or the property from unreasonable seizure and, it may be, confiscation. If the city of Oneida was of sufficient importance to make it a place of deposit for large quantities of liquors intended for shipment to other States and territories, though imported and in the original packages, the ordinance would interfere with commerce between the States, and it might be with foreign commerce. But confine the operation of the ordinance to the ordinary traffic between Oneida and its neighboring towns and cities, and it is unjust and illegal.

It is apparent that the ordinance is *ultra vires* and void.

It may be said that, in the cases supposed, the party in possession may prove his innocence—may show the purpose to be lawful. The law ought not to be guilty of such harshness and absurdity as to require a man to prove his innocence when there is not even the suspicion of guilt. The mere kindness and courtesy of giving a glass of wine to a friend may constitute a nuisance and be visited with severe punishment.

That the legislature may prohibit the retail of intoxicating liquors has been often decided by this court; but this charter has taken a long step in advance of all previous legislation. It empowers the council to license, regulate and tax the sale of spirituous liquors; to declare the sale, and the keeping on hand for sale, a nuisance; to provide for its summary abatement and suppression; and it confers the power upon the police magistrate to issue warrants commanding the search of the premises of persons suspected of selling. Then it makes the mere possession *prima facie* evidence of unlawful intent; and, without satisfactory explanation, sufficient evidence of a sale and of keeping on hand for sale.

By the ordinance, the possession for sale may be adjudged a nuisance, and upon complaint that any person has in his possession, for the purpose of sale, intoxicating liquors exceeding in quantity one gallon, a warrant shall issue for the search of his dwelling house, and if the liquors are found they shall be seized and the person arrested, and both shall be brought before the magistrate, who shall immediately proceed to try the person, and if he should not offer to the justice a *satisfactory explanation* and show that he had the liquors for a *lawful purpose,* he shall be found guilty of a nuisance and fined, and ordered to the common jail until the fine and costs are paid; and the liquors seized shall be ordered to be sold on execution as other property, and the proceeds shall be applied to the payment of the fine and costs.

One remarkable feature of the ordinance is, that while seemingly intended for the abatement of a designated nuisance, it really maintains it. Blackstone says, a nuisance is anything that worketh hurt or damage. The nuisance aimed at in this instance must be termed of a public character as affecting public morals. It must have been regarded as noxious and injurious to the public welfare. Yet the council, while bitterly denouncing the offensive thing upon paper, made no provision for its destruction, as a due regard to the public morals required. On the contrary, the liquors are

recognized as property ; a sale of them may be ordered ; a transfer is made to the possession of another ; and then a new search will probably begin ; or, will the sale change the nature of the liquors and expurgate their hurtful qualities ? It would seem to an ordinary mind that, if the article is so great a nuisance as to require such summary proceedings for its suppression, the sale of it by the officer should likewise be considered a nuisance which ought to be suppressed.

Another serious objection to both charter and ordinance is, that they direct the seizure of all the liquors which may be found, and that all shall be sold. There is no limitation upon the action of the officers or of the exercise of the right of seizure. The fine can not exceed $100, yet liquors may be seized of the value of thousands of dollars. In this case, liquors of the value of $500 were taken. The judgment rendered was *in personam* for $50, yet property, ten times the amount, might be ordered to be sold for its satisfaction. The only cause for the sale must be for the satisfaction of the judgment, for we can not suppose that a sale would be ordered merely for the exercise of unusual and arbitrary power.

Who appropriates the surplus after the payment of the judgment? In justice it should be returned to the owner, but it is not so provided.

The constitution of 1848 prohibited justices of the peace from trying any person punishable by fine above $100. Though the accused in this case could not be fined in an amount exceeding $100, yet he might virtually be punished by deprivation of his property to the extent of $500.

Thus an inferior officer, limited in jurisdiction and in knowledge of the law, is authorized to adjudicate in reference to an unlimited amount of property. The seizure of the property permitted is unreasonable, and in violation of the Declaration of Rights.

A frequent recurrence to certain fundamental principles is essential to the preservation of good government, and to the security of the liberty and personal rights of the citizen.

Every man has the right to acquire and protect his prop-
erty ; to be secure against unreasonable searches and seizures ;
to a fair trial according to the course of the common law, be-
fore he can be deprived of life, liberty or property ; and in all
criminal prosecutions the right to be heard, to demand the
nature and cause of the accusation against him, and to meet
the witnesses face to face.

By the system of measures devised by the charter and ordi-
nance, the citizen may be deprived of property without notice ;
condemned without witnesses ; his premises subjected to an
unreasonable search, and his property, to an unlimited amount,
seized.

Spirituous liquors, ale and beer, are property, as much so as
money or lands.   They are chattels ; are articles of consump-
tion and of commerce.   The ordinance recognizes them as
property and directs their sale on execution, and permits
druggists to keep them.   Their abuse may be restrained, and
punishment inflicted upon those who sell them to the injury
of others.   They may, as well as other chattels, come under
the designation of nuisance, and, to a certain extent, lose their
quality as property ; but they can not, *per se,* lose their qual-
ity as property.

The charter permits their seizure without any notice to the
owner.   The ordinance is but a slight, if any, improvement.
It authorizes the seizure of the liquors and the arrest of the
person.   But if he is not found, no notice, actual or construc-
tive, is provided for.

If the person be arrested, upon the trial—if it deserve the
name—the prosecution need prove nothing ; need not pro-
duce any witnesses to undergo the ordeal of cross-examina-
tion.   The complaint under oath, and the exhibition of the
liquors in court, make out a *prima facie* case.   The accused
must then submit, or prove that he kept the liquors for a law-
ful purpose.   His guilt is a presumption of law unless he
proves his innocence.   The *ex parte* proceedings of the officers
condemn him unless he can make a satisfactory explanation.

Thus the rule is reversed, that no man can be required to explain until sufficient proof is offered to warrant a just and reasonable conclusion against him.

It is no excuse that there was a trial in this case. This only proves that the prosecution was more tolerant than it might have been. We must look at the stringency of the law. A bad law is none the better because it is not rigidly enforced.

The last clause of section 22 of the charter is still more obnoxious; not on account of a change in the rules of evidence, but for other reasons.

The legislature may change the law and increase the presumptions of guilt. It may, to a certain extent, make acts evidence of an unlawful intent which had before been innocent. It may declare the possession of certain articles of property, on account of their highly dangerous character, unlawful. But such laws must always have proper safeguards for the security of private rights.

To lessen and prevent the evils of intemperance and the innumerable ills flowing therefrom, it is within the power of the legislature to declare the possession of intoxicating liquors, for the purpose of sale, as *quasi* a nuisance, and provide a well guarded system for the suppression of their use, and to enact that such possession shall be *prima facie* evidence of unlawful intent.

However we may regret the modification or abandonment of the wise principles of the common law which have, for ages past, afforded ample protection to life, liberty and property, the propriety of such action must be left to legislative wisdom and discretion.

But in making such changes, the utmost care should be observed so as to preserve the sacredness of the domicil.

There can be no justification for the search which is authorized by the charter. Possession is declared to be evidence of unlawful intent; hence, the possession is unlawful. Unlawful possession justifies the search and seizure; therefore the

mere possession justifies the search. Without actual sale—without the overt act—without even intent, in fact, to violate the law—the sanctity of the domestic circle is violated by an odious search.

For cause so trivial the privacy of the citizen can not be invaded and his house ransacked from cellar to garret. If this can be done, the rampart which the constitution has built up to secure the hearthstone from rude intrusion, is an effectual defense no longer. The search provided for is odious and unreasonable, and in conflict with the Declaration of Rights.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*