THE CITY OF DECATUR, Appellee, *vs.* ADOLPH SCHLICK *et al.* Appellants.—THE CITY OF DECATUR, Appellee, *vs.* GEORGE SCHENCK, Appellant.—THE CITY OF DECATUR, Appellee, *vs.* ANTHONY SCHERER *et al.* Appellants.—THE CITY OF DECATUR, Appellee, *vs.* JOHN SEIBERT *et al.* Appellants.

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. MUNICIPAL CORPORATIONS—*what does not render municipal ordinance invalid.* A municipal ordinance is not invalid merely because it prohibits and penalizes acts already prohibited by statute.

2. SAME—*object of the Local Option act of 1907.* The object of the Local Option act of 1907 is to secure to the voters of certain territory the option to determine by certain methods, under certain restrictions, that prohibition of the sale of intoxicating liquor shall prevail in such territory until otherwise determined according to law.

3. SAME—*effect of provision of section 8 of Local Option act suspending operation of ordinances.* Section 8 of the Local Option act suspends the operation, in anti-saloon territory, of only such municipal ordinances as prohibit, regulate or restrict the traffic in intoxicating liquor in some manner or by some method inconsistent with the act or with the status of the territory as anti-saloon territory, and such prohibitory, restrictive or regulative ordinances as are consistent with the act are not affected by the suspension clause of section 8.

4. SAME—*city in anti-saloon territory has power to pass prohibitory ordinance.* A city located in territory which has become anti-saloon territory has power to enact an ordinance prohibiting the sale of intoxicating liquor within the city in any manner not inconsistent with the Local Option act and provide penalties for violation of the provisions of the ordinance.

5. SAME—*what provision of ordinance with reference to nuisances is not invalid.* A provision in an ordinance adopted by a city located in anti-saloon territory which declares to be nuisances all places where intoxicating liquor is sold in violation of law "or distributed or divided among the members of any club or association by any means whatever, when such distribution or division shall be an illegal sale or gift of liquor," is authorized by the provision of the Local Option act making any shift or device to evade the provisions of the act an unlawful selling, and is valid.

6. Same—*when provision of an ordinance applies to so-called clubs.* A provision of an ordinance declaring to be nuisances all places where intoxicating liquor is sold in violation of law or distributed or divided among the members of any club or association by any means whatever, when such distribution or division shall be an illegal sale or gift of liquor, applies to a so-called club consisting of patrons of a person engaged in the business of dispensing intoxicating liquor to them for consumption on the premises, even though such person charges for the service, only, the liquors being the property of the individual patrons and stored for them by the proprietor.

7. Local option—*act of 1907 is directed not only to the business but to the place of business of seller of liquor.* The shift-and-device provision of the Local Option act of 1907 is intended to do away not only with the business but also with the place of business of the seller of intoxicating liquors.

Appeal from the Circuit Court of Macon county; the Hon. W. K. Whitfield, Judge, presiding.

Charles C. LeForgee, and Vail & Miller, for appellants.

Baldwin & Carey, for appellee.

Mr. Justice Watson delivered the opinion of the court:

The city of Decatur brought its four actions of debt in the circuit court of Macon county against the several appellants here, seeking recovery in each action for violations of a municipal ordinance. The causes were submitted to the court for trial without the intervention of a jury, by agreement and upon stipulations of fact, the stipulations providing that in the event the defendants should be found guilty of violating the provisions of the ordinance the fine should be $50 against each defendant found guilty, on each count of the declaration under which the finding of guilty should be made. Each declaration contained four counts, and each defendant was by the judgment of the court convicted and fined under each count of the declaration filed against him. Appeals were prayed by each and all of the

defendants, and upon certificate of the trial judge that the validity of a municipal ordinance is involved and that the public interest requires an appeal directly to the Supreme Court the appeals were perfected accordingly. In this court, upon motion and by consent, the four cases were consolidated and are to be considered and decided as one case, the opinion filed to be applicable to and decisive of all issues involved.

We are advised by the briefs of counsel there are two questions to be considered on the appeal, being, first, whether the appellee city had power to pass the ordinance under which the suits are brought; and second, whether, if the ordinance is valid, the facts stipulated constitute a breach of its provisions. These questions will be considered in the order in which they are above mentioned.

*First*—The appellants contend that under the so-called Local Option law of 1907 (Hurd's Stat. 1913, p. 1025,) a city which has become or is in anti-saloon territory, as defined by the statute, has no power to pass an ordinance prohibiting and penalizing acts which are expressly prohibited and penalized by the provisions of the statute itself, basing their contention upon the construction of the language found in section 8 of the act, viz.: "In all anti-saloon territory, during the time that it continues to be anti-saloon territory, the operation of all ordinances providing for the restriction, regulation or prohibition of the sale of intoxicating liquor, or for the issuing of dram-shop licenses within any portion or the whole of such territory, so far as inconsistent with its status as anti-saloon territory, shall be suspended."

By vote of the people the town of Decatur, within the boundaries of which lies all of the city of Decatur, became anti-saloon territory in April, 1914. Thereafter, on May 25, 1914, the city council of the city of Decatur adopted the ordinance in question, which was published June 15, 1914, and which in all respects here involved is identical

with the said Local Option statute, (the sections, however, being differently numbered,) except that in section 3 of the ordinance (otherwise identical with section 14 of the act) these words are added at the close of the section, viz., "or distributed or divided among the members of any club or association by any means whatever when such distribution or division shall be an illegal sale or gift of such liquor." Otherwise sections 1, 3 and 15 of the ordinance correspond, respectively, with sections 12, 14 and 13 of the act, except their effect is limited to the city of Decatur.

Appellants concede in their brief that a municipal ordinance is not invalid by reason of prohibiting and penalizing acts already prohibited by statute. That such is the law we have decided in numerous cases, among which we are referred to *Wragg* v. *Penn Township,* 94 Ill. 11, *Hankins* v. *People,* 106 id. 628, and *City of Chicago* v. *Union Ice Cream Co.* 252 id. 311.

Section 8 of the Local Option law, so called, suspends the operation in territory which the people by vote determine shall be anti-saloon territory, of "all ordinances providing for the restriction, regulation or prohibition of the sale of intoxicating liquor or for the issuing of dram-shop licenses, * * * so far as inconsistent with its status as anti-saloon territory," and section 9 of the statute provides for the revival of such ordinances, if not in the meantime repealed, upon the territory becoming saloon territory.

Appellants' argument is, that since, during the period when certain territory is made or becomes anti-saloon territory, prohibition prevails there by virtue of the statute, therefore an ordinance imposing prohibition in such territory, like an ordinance regulating or restricting the liquor traffic therein, is suspended until the territory becomes saloon territory, or otherwise the placing of the words "or prohibition" after the words "restriction, regulation," in said section 8, is meaningless and accomplishes no result. They further contend the adoption by the legislature of

the Local Option act is in the nature of the passing of
an ordinance on the subject of regulating and prohibiting
sales of intoxicating liquor, suspending other local legis-
lation which has for its aim the same object. Admitting
the appellee city could lawfully adopt ordinances in aid of
the act and to render its prohibitions more effective, they
nevertheless insist the direct prohibition of sales, as well
as the declaration of nuisances, is provided for, once and
for all, by the decision of the voters at the local option
election, and with these matters the local municipal authori-
ties have no further concern. We are not in accord with
these views of appellants but rather incline to follow the
rule mentioned above, to the effect the municipality may,
by ordinance, restrict, regulate and prohibit the same acts
which are punishable and penalized under a law of the
State, so far as authorized so to do by law; (*City of Chi-
cago* v. *Union Ice Cream Co. supra,* and cases there cited;)
and also to apply the familiar rule in the construction of
statutory enactments, viz., the intention of the legislature
as disclosed by the language used in the enactment, and in
view of the conditions sought to be changed, remedied or
affected, should be the object of the courts in construing
the law enacted. (Hurd's Stat. 1913, chap. 131, sec. 1,
p. 2378; *Illinois Central Railroad Co.* v. *People,* 143 Ill.
434; *People* v. *Hinrichsen,* 161 id. 223; *Eddy* v. *Mor-
gan,* 216 id. 437.) Manifestly, the object of the law was
to secure to the voters of certain territory the option to
determine by certain methods, under certain restrictions,
that prohibition of the sale of intoxicating liquor should
prevail in such territory until otherwise determined accord-
ing to law. With this purpose in view the act suspends
the operation, in any and all portions of such territory, of
only such municipal ordinances as prohibit, regulate or re-
strict the traffic in such liquor in some manner or by some
method inconsistent with the act or with the status of the
territory as anti-saloon territory. Such prohibitory, re-

strictive or regulative ordinances as are consistent with the provisions of the act are in no way affected by the suspension clause of section 8.

We are referred by appellants to but one authority in support of their position upon this question, and that, they assure us, decides a "very similar question under the Colorado Local Option law," being the case of *People v. Miller,* 127 Pac. Rep. 228. That case was decided under a so-called local option law of the State of Colorado which provides for the repeal of all legislative enactments in conflict with its provisions, but further provides that "an ordinance passed by a municipal corporation * * * prohibiting the selling or giving away of intoxicating or malt liquors shall remain in full force and effect until thirty days after an election shall be held." The Supreme Court of Colorado construed this as a positive declaration of the intention, purpose and understanding of the legislature to the effect that the act suspends the operation, after the specified thirty-day period, of all municipal ordinances prohibiting the sale or giving away of intoxicating liquor during the time the Local Option law should be in force. The case is not in point here, because the suspension provided for by section 8 of the Illinois statute operates, as we have above said, only upon such municipal ordinances as are or may be inconsistent with the status of the territory as anti-saloon territory. The addition of the clause, "so far as inconsistent with its status as anti-saloon territory," by the legislature of Illinois, clearly distinguishes our statute from that of the State of Colorado and makes inapplicable here the reasoning and decision in the Colorado case cited.

In the case of *Mayhew* v. *City of Eugene,* 104 Pac. Rep. 727, the Supreme Court of the State of Oregon decided a question similar to the one here presented, and said: "It is contended that the Local Option law being in force in the city of Eugene, the city has no authority to legislate in any way against the sale of liquor. We have

already held that when local option has been adopted in any city or town all laws or ordinances conflicting therewith are suspended; in other words, as long as the State law prohibits an act the city law previously in force cannot be invoked to permit said act. But there is no conflict between the Local Option law .and the ordinance declaring the place where liquors are sold to be a nuisance. An act may be a penal offense under the laws of the State and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other."

We are of the opinion this is the correct rule of decision also in Illinois, and agree with appellants that it is immaterial whether the ordinance under consideration was passed by the city before or after the vote was taken under the Anti-saloon act in the town of Decatur. The city had power, under clauses 46, 48, 59, 66, 75 and 97 of section 1 of article 5 of chapter 24, known as the City and Village act, to pass the ordinance, and its provisions are not inconsistent with the provisions of the Anti-saloon statute. (*People* v. *Cregier,* 138 Ill. 401; *Kettering* v. *City of Jacksonville,* 50 id. 39; *Laugel* v. *City of Bushnell,* 197 id. 20.) It must therefore be sustained as a valid exercise of the legislative powers delegated by law to municipal authority.

*Second*—The facts stipulated in the Schlick and Bernard case are substantially these: Defendants, prior to the local option election of 1914, conducted a dram-shop or licensed saloon in a ground-floor room in the business district of Decatur. After the election they closed the saloon and removed from the building their stock of intoxicating liquors, retaining therein the bar and other fixtures and furniture. They leased the premises from the president of the Decatur Brewing Company, he having leased the same from the owner. Inside the front door is a cigar case. In the rear of that is a screen about six feet high,

which shuts off the view from the street of the interior behind the screen. In the rear of the screen is the bar, and also tables at which defendants' patrons may sit while eating or drinking. On or about July 7, 1914, the defendants opened the place under the name of "The Business Men's Club," and thereafter continued a business of selling lunches, soft drinks, cigars and tobacco and the business further herein described. They greatly enlarged their ice box and divided it into compartments. There was no club organization and no club dues, but about one hundred patrons of defendants ordered and bought from others, but not from defendants, beer in cases and whisky and other intoxicating liquors in bottles, and caused the same, from time to time, to be delivered at defendants' place of business, and the defendants placed each man's supply in his separate storage place, labeled with his name, keeping a portion thereof on ice in the ice-box compartment bearing the name or number of the owner. Such owner was served with his beer or whisky on request for himself, or for himself and his friends or guests who accompanied him, and he paid defendants for the service and for the storage and for the accommodation, at the rate of five cents for each pint bottle of beer, ten cents for each quart bottle of beer and ten cents for each glass of whisky or other liquor. Sugar, ice and seasoning were furnished by the defendants to the patrons and by them used in the preparation of their drinks without additional charge. The defendants gave their entire time to the conduct of the business. There was no sign in or about the place advertising the sale of lunches, and the principal part of the business of defendants was the handling and distribution of intoxicants by the methods set forth in the stipulation. They did this for profit and out of the profits paid the expenses of the place other than the original cost of the intoxicating liquors. In that cost or purchase they had no part or interest and received no commission. In the alleged club there

were no applications for membership, not necessarily any acquaintance among the members, and no requisite conditions of membership other than the purchase and ownership of intoxicants as above mentioned, the term "club" being used only for convenience. Each patron was at liberty to take away his liquors, and no one was supplied with liquors not belonging to himself except in case of guests, as aforementioned. There were no specific hours or days for opening and closing the place, and the defendants did not permit drunkenness there, and they paid no United States internal revenue tax as dealers in spirituous or malt liquors. Lunches were served and sold to such as wished to buy, and were eaten in the room and at the tables where the intoxicating drinks were served. By the stipulation it is agreed defendants were conducting the business as described, and receiving pay therefor as described above, on the dates specified in the declaration and each count thereof.

Additional facts in the Schenck case: Schenck rented from the Harpstrite estate. His place was called "The Oasis Club" and had about fifty patrons. The front room is eighteen feet wide by fifteen deep, and contains a cigar case and a writing desk. A small stock of cigars, cigarettes and tobacco is kept in this room for general sale at retail. From the rear of the room a door opens into a room eighteen feet wide and sixty-five feet deep, where the business is conducted as in the Schlick and Bernard case, except there is no bar or saloon fixtures there, the same having been removed after the township election mentioned. The· door between the rooms is kept closed but not locked, and excludes the view from the street and from the front room to the rear room. At first defendant gave keys to this middle door to some of his patrons, but they were never used.

Additional facts in the John and Charles Seibert case: Their place is leased from a person who leased from the president of the Decatur Brewing Company. It has about

seventy patrons and is called "The Union Club." Defendants serve as lunch only ham and cheese sandwiches, and practically none but their patrons or members use the room in which the drinking of intoxicants goes on. After the town of Decatur became dry territory the bar and other saloon fixtures were removed and the place converted into a pool room, in which also is a cigar case. A small inner room was partitioned off, in which are stored the cases of beer and bottles of other intoxicants and where are two small tables on which the drinks are served. With the partition door closed, the interior of the small room cannot be seen from the pool room or from the street. The patrons have keys to the inner room, which are not much used.

Additional facts in the Scherer and Meisenheimer case: This is called "The Merchants' Club" and the room is rented from the president of the Decatur Brewing Company. The patrons number about ninety-five. There are three rooms, one behind the other. The front room contains a cigar case, with a few brands of cigars, cigarettes and tobacco for the retail trade. Back of this room, and separated from it by a partition, is the room in which the intoxicating liquors are served and in which the saloon bar still stands, although not much used. In this room, also, are the tables and chairs where the patrons and their guests usually sit to drink, as well as the glasses and dishes, the ice box and the intoxicating liquors. The interior of this room cannot be seen from the street or from either adjoining room with the doors closed. They are usually closed and locked, most of the patrons having keys to the door leading from the front room. The rear room is let free of rent to another person who there conducts a lunch business, and who, when desired to do so, sells lunch to the patrons and serves it to them in the middle room. In all other respects the four cases are identical.

The act commonly known as the Dram-shop law, in force July 1, 1874, is entitled "An act for the licensing of

and against the evils arising from the sale of intoxicating liquors." Under its provisions all of the State is prohibition territory in the respect that sales of intoxicants are prohibited therein, except as relief against such prohibition is obtained by the issuance of dram-shop licenses procured in accordance with the requirements of the statute. Such, also, was the declared policy of the State in legislation prior to the adoption of the Dram-shop law, the said evils arising from the sale of such liquors having been early recognized by the legislature. The said act of 1874 declared to be nuisances all places where intoxicating liquors should be sold in violation of the law, and the giving away of such liquors, or other shift or device to evade the provisions of the act, is thereby declared to be an unlawful selling.

The act known as the Local Option law, entitled "Anti-saloon territory," in force July 1, 1907, is "An act to provide for the creation by popular vote of anti-saloon territory, within which the sale of intoxicating liquor and the licensing of such sale shall be prohibited and for the abolition by like means of territory so created." This act also contains a nuisance section, and also provides, as does the ordinance here under consideration, what shall be held evasions of the law and unlawful sales, as follows:

*"Evasions of act—unlawful selling.*] Sec. 13. The giving away or delivery of any intoxicating liquor for the purpose of evading any provision of this act, or the taking of orders or the making of agreements, at or within any political subdivision or district while the same is anti-saloon territory, for the sale or delivery of any intoxicating liquor, or other shift or device to evade any provision of this act, shall be held to be an unlawful selling."

In construing the Dram-shop law in *Siegel* v. *People,* 106 Ill. 89, this court held the word "sale," as used in that law, is intended to have its usual signification, but the Anti-saloon law and the ordinance give additional meaning to the word "sale" by the provision above quoted. The

legislature was authorized to so extend its meaning by such enactment. (*People* v. *Steinhauer,* 248 Ill. 46.)   In the *Steinhauer case* this court held it not necessary to allege each step of the process by which a sale might be completed, and also that the shift-and-device section of the law created and defined no independent or new offense, but was simply an exercise of the police power of the legislature in the control of the liquor traffic by preventing the violation of the law through evasion.

The question to be determined is whether the business conducted by the defendants is such a shift or device as constitutes either a breach or evasion of the provisions of the ordinance. As stated in the brief of appellants: "The defendants are in the liquor business. They dispense intoxicating liquor for money. They are ex-saloon-keepers and they do business at the old stands. Doubtless many of their old patrons store liquor with them now. Any person who wishes to store liquor with them can do so, provided he is acceptable. The liquor is drank on the premises. In two of the places the defendants serve a few articles of food, and the patrons of another can procure it in the room where they drink, from a lunch counter in an adjoining room. In the place run by the Seiberts only ham sandwiches are sold. Doubtless, however, all the places are almost exclusively patronized by the persons who keep liquor there and the lunch businesses are run simply as side lines. Are these places 'saloons' or 'bar-rooms,' as we usually think of saloons and bar-rooms?  *  *  *  The agreed statements recite that the places are not clubs in any proper or ordinary sense of the word, but it strikes us that it is just as proper to call them clubs as it is to call them saloons." As stated by the appellee the question is: "Were the acts of the defendants of such a nature that they can be construed to be guilty of selling intoxicating liquors or keeping a place where such liquors were illegally sold?"

Keeping in view the declared policy of the legislature against the evils arising from the sale of intoxicants and to prohibit both the sale thereof and the licensing of such sale, and the declaration of the purpose to punish evasions as well as direct infractions of the law, we find no difficulty in determining that if defendants have succeeded in discovering and practicing a system which will enable them to conduct the liquor business, which their brief says they are conducting, with immunity, then they have also succeeded in rendering the Dram-shop law and the Local Option law a nullity. While the territory in question was not anti-saloon territory the stipulation shows the defendants were licensed keepers of dram-shops, and as such they were necessarily required to pay revenue to the municipality. They were also required to obey certain regulations as to the hours for opening and closing their places of business, as to the use or non-use of screens, exclusion of minors, closing on Sundays and election days, and other regulations not necessary to be here enumerated. None of these restrictions now embarrass them, and we are asked to declare, contrary to the established policy of the State, that notwithstanding they pay no revenue or license fee and submit to no statutory regulation, they may, unmolested, conduct the liquor business in territory where the same has been prohibited, according to law, by popular vote.

Many cases have reached the courts of last resort in this and other States in which shifts and devices varying in their special facts and methods and illustrating the ingenuity of the human mind have been submitted as successful evasions of dram-shop and local option laws. No useful purpose would be served by enumerating here the various devices relied upon for such purpose or the authorities where the history and final disposition thereof may be found. However, a few may properly be referred to and commented upon as showing the general trend of the deci-

sions of this court upon the subject and the view this court has entertained as to the public policy of our State.

In *Rickart* v. *People,* 79 Ill. 85, an association was formed for the avowed purpose of promoting temperance, friendship and the like. It bought the dram-shop from one of its members, elected him treasurer and he continued to conduct the business. The members paid dues, had tickets with numbers to be punched for their drinks, and they drank from community stock, paying therefor, ostensibly at least, into the community treasury. This court sustained the conviction of the bar-tender or keeper for violation of the Dram-shop law, and declared that one who resorts to any shift or device to evade the provisions of the statute is guilty of unlawful selling.

In *People* v. *Law and Order Club,* 203 Ill. 127, this court declared illegal any kind of device used in lieu of a direct sale, and held the dispensing of intoxicating liquors by a social club to its members, without license, to be unlawful, notwithstanding the liquor was furnished by the club at first cost, plus the expense of service, and upon tickets representing the amount of the members' "assessment." In speaking of the device there relied upon, the court said: "If such a device could be tolerated it would render all legislation on this subject nugatory,"—quoting from the *Rickart case, supra;* and further said, in referring to defenses invariably made in prosecutions under the shift-and-device clause of the law, that such specious defenses have received no countenance except in prosecutions for the illegal sale of ardent spirits,—citing *State* v. *Essex Club,* 53 N. J. L. 99.

Much that was said in the opinion in the *Law and Order Club case* was thought to be *obiter dicta* according to counsel for defendant, in the later case of *South Shore Country Club* v. *People,* 228 Ill. 75, but this court held it had not in the *Law and Order Club case* turned aside from the issue in the case to a collateral subject in deciding that

the transactions of the club constituted sales. In the *South Shore Country Club case* this court again affirmed and restated its position, to the effect that much ingenuity had been expended in attempting to show that the distributing or furnishing of liquors to members was not a sale, and that specious defenses of the character mentioned have received no consideration by courts except in prosecutions for the illegal sale of liquor.

While in the cases now under consideration appellants strenuously contend their places are not saloons but are more in the nature of clubs, it is nevertheless admitted in the stipulation that they have no club organization and bear the name only for convenience. If clubs, they come under the condemnation of the law as declared and construed in the opinions above referred to; and if saloons, they are condemned by the language of the Anti-saloon statute. In adopting this law to remedy the evil conditions that had arisen under the Dram-shop law, the legislature decided to do away with not only the business but of the place of business of the seller of intoxicating liquors. The shift-and-device clause of the Dram-shop law only prohibited, specifically, the giving away of intoxicants to evade the provisions of the act and "any other shift or device to evade its provisions." Even under that limited provision the condemnation by this court of the various subterfuges relied upon to defeat the object of the law has been drastic and comprehensive. Yet under the Dram-shop law the device condemned could only be condemned as being, in effect, a sale as the meaning of the word "sale" was established in the *Rickart case, supra.* The legislature, by extending and broadening the definition of a "sale" has created no new offense, as we held in *People* v. *Young, 237* Ill. 196, but it has brought within the condemnation of the law, as sales, acts which under the former restricted definition of the term possibly might not have been regarded as having all the elements which constitute a sale.

We entertain no doubt the defendants, in conducting the business as described in the stipulation, a summary of which appears in this opinion, were violating the provisions of section 15 of the ordinance under which they were sued, in the delivery to the consumer of intoxicating liquors for the purpose of evading the provisions of the ordinance, also in the making of agreements for the delivery thereof, and that their methods of conducting the business make their conviction proper under the language in the ordinance which makes such shifts and devices unlawful selling. It necessarily follows the judgment of the circuit court was correct, also, in respect to the conviction of the defendants for maintaining places which by section 3 of the ordinance are declared to be nuisances.

The judgment of the circuit court in each of the cases appealed is accordingly affirmed.   *Judgments affirmed.*