The Town of Cortland, Appellee, vs. Ennis Larson, Appellant.

*Opinion filed June 22, 1916.*

1. Municipal corporations—*what is not within the grant of power with reference to intoxicating liquor.* The power of a town or city to "regulate, prohibit or license the selling of" intoxicating liquor does not include power to make it an offense to receive, keep or use intoxicating liquor at a club or other place for individual, personal use as a beverage, only, where there is no element of selling, giving away or otherwise disposing of the liquor as a device to evade the law; nor does it include the power to make it an offense to maintain or assist in maintaining a club where intoxicating liquor is received or kept as a beverage by the individual members for their personal use, only.

2. Same—*town or city cannot prohibit person from receiving or using intoxicating liquor.* There is no law in Illinois which prohibits a person from receiving, keeping or using intoxicating liquor for private consumption, when such receiving, keeping or using is done in such a manner as not to interfere with the rights of others and there is no intoxication or disturbance; and a city, town or village has no power to enact an ordinance prohibiting such receiving, keeping or using.

3. Same—*a club cannot be used as a means of evading laws or ordinances against sale of liquor.* A club, or assembly of individuals as a club or association, cannot be used as a means of evading and violating the provisions of the Dram-shop law or Local Option law or ordinances of municipal corporations prohibiting or licensing the sale of intoxicating liquor.

4. Same—*police power does not authorize ordinance prohibiting possessing and using intoxicating liquor.* The police power of a city, town or village does not authorize an ordinance prohibiting a person from receiving, keeping or using intoxicating liquor as a beverage where no question of an unlawful selling or giving away is involved, as intoxicating liquor is property, and the police power does not justify an arbitrary interference with the property and privileges of citizens.

5. Same—*a city cannot arbitrarily declare a thing a nuisance.* The power delegated to municipal corporations to determine what are nuisances does not include the power to declare something a nuisance which is not a nuisance *per se* or recognized by the common law or the statutes as a nuisance, and does not extend to declaring every place to be a nuisance where intoxicating liquor

is received, kept or used as a beverage, irrespective of the manner of such use.

6. SAME—*what is not within the power of the State or a city.* It is not within the power of a municipal corporation or the State to regulate the private life or conduct of a citizen in the use of his property in matters in which he, alone, is affected and others are not necessarily affected.

APPEAL from the County Court of DeKalb county; the Hon. WILLIAM L. POND, Judge, presiding.

ALSCHULER, PUTNAM & JAMES, for appellant.

J. E. MATTESON, and C. D. ROGERS, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

The appellant was convicted in the county court of DeKalb county of a violation of sections 2 and 3 of a municipal ordinance of the town of Cortland and was fined $25 for the violation of section 2 and $30 for the violation of section 3. Propositions of law which were submitted by the defendant and refused by the trial court raised the question of the constitutionality and validity of the ordinance under which the defendant was convicted. He has appealed directly to this court on the ground that the validity of the ordinance is involved, the trial court having made the necessary certificate.

The sections of the ordinance involved are as follows:

"Sec. 2. Whoever shall within said corporate limits, directly or indirectly, keep or maintain by himself or by associating or combining with others, or shall in any manner aid, assist or abet in keeping or maintaining, any clubroom or other place in which any intoxicating liquor or spirituous, vinous, malt or fermented liquor, in any quantity whatsoever, is received or kept for the purpose of use, gift, barter, exchange or sale as a beverage, or for distribution or division among the members of any club or as-

sociation by any means whatever, and whoever shall use, barter, exchange, sell or give away, or assist or abet another in bartering, exchanging, selling or giving away, any intoxicating liquor or spirituous, vinous, malt or fermented liquor, or any mixture of any of the said liquors, or any drinks which contain any spirituous, vinous, malt or fermented liquor, in any quantity whatsoever, so received or kept, shall upon conviction thereof be fined not less than twenty-five dollars ($25) nor more than fifty dollars ($50) for each and every offense.

"Sec. 3. All places within the said corporate limits where orders are taken or agreements made for the sale or delivery of any intoxicating liquor or spirituous, vinous, malt or fermented liquor, or any mixture of said liquors, or any drinks which contain any spirituous, vinous, malt or fermented liquor in any quantity whatsoever, or where any said liquors are sold, given away, bartered, exchanged or in any manner disposed of, or are kept for sale, or are received or kept for the purpose of use or distribution or division among the members of any club or association by any means whatsoever, shall be taken and held and are declared to be a nuisance and may be abated as such; and whoever shall keep any such place, either as principal, clerk or servant, shall on conviction thereof be fined not less than thirty dollars ($30) nor more than fifty dollars ($50), and it shall be part of the judgment, upon the conviction of the keeper, that the place so kept shall be shut and abated by the constable until the keeper shall give bond, with sufficient security to be approved by the court, in the penal sum of one thousand dollars ($1000) payable to the said town, conditioned that he will not violate or permit any violation of this ordinance at such place: *Provided,* that if the keeper refuses or neglects to abate such nuisance instanter after being notified so to do by the president or constable of said town, the president may order any such place summarily shut up and abated."

The facts were stipulated as follows: "The claimed violation of said ordinance charged against defendant in this case is, that he did, within the corporate limits of said town, keep or maintain, by himself or by associating or combining with others, or assist or abet in keeping and maintaining, a certain clubroom in which intoxicating liquor was received and kept for the purpose of use as a beverage and did use intoxicating liquor so received and kept. The facts are, that the defendant is a resident of said town and a citizen of the State of Illinois and a citizen of the United States of America, and is a member and officer of a certain club having its rooms in a building situated upon the south three-fourths of lot 4 in block 11, in said town of Cortland, within the corporate limits thereof, which said building is neither the residence nor store building of defendant or any other member of said club but is used exclusively by said club; that as such member and officer, the defendant, by associating with the other members, keeps or maintains, or assists and abets in keeping or maintaining, the clubrooms; that in said clubrooms intoxicating liquor is received and kept by defendant in his individual locker, to which he alone has access, for his own individual, personal use as a beverage, and that other members of said club receive and keep their own individual liquor in individual lockers in said clubrooms for their individual personal use as a beverage. It is not contended that intoxicating liquor is sold, bartered, exchanged or given away at, in or by said club or by defendant, or any member thereof, or received or kept there for any of said last mentioned purposes. Defendant orders and purchases his own intoxicating liquor for himself, only, by United States mail, in places outside said town of Cortland where it is not unlawful to sell or purchase same, and said liquor is forwarded and delivered to him by a common carrier and is received, kept and stored by defendant at said club for his own individual, personal use as a beverage and is there drank by

him only. The members of said club who keep liquor there, order, receive, keep and drink their own individual liquor in the same manner. Each orders, receives, keeps and drinks his own individual liquor, and that only. The defendant and other members of said club are men of good standing in the community and their behavior has been orderly and gentlemanly. There has been no breach or disturbance of the peace nor any fighting, brawling, carousing or drunkenness at or about said club. Only members of said club enter the clubroom. There is no 'treating' nor any distribution or division of liquor among the members."

The town of Cortland was incorporated under a special charter conferring upon it all the rights, powers and privileges granted to the town of Belvidere in the act under which the latter was incorporated, section 10 of that act being as follows:

"Sec. 10. The board of trustees shall also have power to make regulations to secure the general health of the inhabitants; to declare what shall be nuisance, and prevent and remove the same; * * * the exclusive power to regulate, prohibit or license the selling of spirituous, vinous and malt liquors of any kind within the corporate limits; * . * * to make all such ordinances from time to time, and alter, amend and repeal the same, as shall be necessary to carry into effect and execution the powers specified in this act, so that the same be not inconsistent herewith nor with the laws or constitution of the United States or of this State; to impose fines, forfeitures and penalties for the breach of any ordinance of the incorporation, and to provide for the recovery and appropriation of any such fine or forfeiture and the enforcement of any such penalty; * * * to regulate the police of the town." * * *

The appellant contends that the town of Cortland was without power to adopt the ordinance in question and that the ordinance is in violation of the constitution of the United States and of the State of Illinois. The power of

a municipal corporation to pass an ordinance must be found expressed in its charter or must be necessary to carry out the powers granted.   By section 10 quoted above, the board of trustees of the appellee are given the exclusive power to regulate, prevent or license the sale of spirituous, vinous or malt liquors of any kind within the corporate limits, to declare what shall be a nuisance and prevent and remove the same, and to make all such ordinances as shall be necessary to carry into effect and execution the powers specified, so that the same be not inconsistent with its charter or with the laws or constitution of the United States or of this State.   Under the stipulation of facts on which appellant was convicted it is conceded that he did not sell, barter, exchange or give away any intoxicating liquor at said club. The only portion of the ordinance, therefore, of which the appellant was found guilty is embraced within the following portion: "Whoever shall within the corporate limits, directly or indirectly, keep or maintain by himself or by associating or combining with others, or shall in any manner aid, assist or abet in keeping or maintaining, any clubroom or other place in which any intoxicating liquor, * * * in any quantity whatsoever, is *received* or *kept* for the purpose of *use* * * * as a beverage, * * * and whoever shall *use* * * * any intoxicating liquor * * * so re--ceived or kept, shall upon conviction thereof be fined," etc.

Appellant, then, was convicted for assisting or aiding in keeping a clubroom, at which place he, like other members of the club, received his own liquor for his own individual use as a beverage and kept such liquor there for such purpose only, and used such liquor so kept for his own individual use as a beverage.   Appellant was an officer of the club, but what office he held or what officers the organization had, or their several duties, if any, is not shown, nor is the admission in the stipulation of facts that he was an officer material, as it is the theory of counsel for appellee that his actions, as a mere member of the club, in keeping

and using intoxicating liquor there, were in violation of the provisions of the ordinance. And so they were. In brief, the appellant was convicted for assisting in keeping a place in which intoxicating liquor was received and kept for the purpose of use and for using such liquor.

Under its charter the town of Cortland had the exclusive power to license, regulate and prohibit the selling of spirituous, vinous and malt liquors of any kind within the corporate limits, and also had the power to regulate the police of the town. The question to be determined is, did it have any power or authority, by reason of its charter, to prevent the receiving, keeping or using of intoxicating liquors under any and all circumstances? In *People* v. *Village of Oak Park,* 268 Ill. 256, this court said (p. 261) : "If a doubt exists concerning the grant of power, the doubt is, by the authorities, to be resolved against the municipality, (*Merrill* v. *Town of Monticello,* 138 U. S. 673; *City of Chicago* v. *Ross,* 257 Ill. 76; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264;) and the enumeration of the powers operates to exclude such as are not enumerated.—*People* v. *City of Chicago,* 261 Ill. 16; *City of Cairo* v. *Bross,* 101 id. 475." The enumeration in the statute of the powers which may be exercised by a municipal corporation excludes such powers as are not enumerated. (*People* v. *Village of Oak Park, supra.*) Tested by the rule laid down in that case and supported by ample authority there is nothing in the charter of the appellee to authorize the enactment of those portions of section 2 of the ordinance above set forth which apply to the facts of this case according to the stipulation and under which appellant is convicted. It is very clear that the express words of the charter, "to regulate, prohibit or license the selling" of intoxicating liquor, do not include the power to make it an offense to receive, keep or use liquor at a club or other place for individual, personal use as a beverage, only, where there is no element of selling or even giving away or disposing of

the same, nor anything in the conduct or actions of those who received, kept and used the liquor that gave others any ground for complaint, except the mere fact of receiving, keeping or using it. Nor can it be fairly said that the power to make it an offense to maintain a club where liquor is received, kept or used as a beverage by the individual owner thereof for his personal use, only, is necessarily or fairly implied or incident to the power expressly granted to regulate, prohibit or license the selling of liquor. In *City of Decatur* v. *Schlick,* 269 Ill. 181, this court held an ordinance valid which was substantially in the same language as the Local Option act, except that it also contained the provision that intoxicating liquor should not be distributed or divided among the members of any club or association by any means whatever, when such distribution or division shall be an illegal sale or gift of such liquor. The ordinance in question contains no such qualification, and the decision of this court in the last mentioned case was based on the fact that the receiving and distribution of intoxicating liquor by means of the agency of the club, so called, was, in effect and in fact, a shift or device to evade the provisions of the ordinance against the selling or giving away of intoxicating liquor.

We have heretofore held that a club, or assembly of individuals or association as a club, cannot be used as a means to accomplish a violation of the provisions of the Dramshop law or the Local Option law or city or village ordinances of similar import. (*People* v. *Law and Order Club,* 203 Ill. 127; *People* v. *Gardt,* 258 id. 468; *City of Decatur* v. *Schlick, supra.*) But the distinction in regard to those cases is that sales were there actually made, and the court held the facts in those cases showed actual sales of intoxicating liquor contrary to the law, notwithstanding the agency of the so-called club. The ordinance in question by its terms applies not only to a clubroom, but to any other place in which any intoxicating liquor, in any quantity

273 — 39

whatsoever, is received or kept for the purpose of use, and also applies by its terms to whoever shall use any such liquor so received or kept. Under the section in question it is an offense for anyone within the corporate limits of the town of Cortland to keep any place in which any intoxicating liquor, in any quantity whatsoever, is received or kept for the purpose of using it as a beverage or to use any intoxicating liquor so received or kept. There is no law in this State which prohibits a person from receiving, keeping or using intoxicating liquor for private consumption, when such receiving, keeping or using is done in such a manner as does not interfere with the rights of others and there is no intoxication or disturbance, as was stipulated in this case, and city or village councils have no power or authority to enact ordinances prohibiting such keeping, receiving or using. *Sullivan* v. *City of Oneida,* 61 Ill. 242.

While the selling or giving away of·intoxicating liquor may be regulated or altogether prohibited by municipalities and by appellee under its charter, intoxicating liquor is not contraband and is recognized as property. Under the strict terms of this ordinance, if it is constitutional and valid, a person could be penalized for keeping liquor for use or for using liquor in his private home. As far as an unlawful sale or giving away of liquor is concerned, it is the fact of selling or giving away that makes the act unlawful and a violation of the law, no matter how, where or when such unlawful selling or giving away takes place in any locality in which the Local Option law is in force or where a valid ordinance has been enacted forbidding the sale or gift of intoxicating liquor. It is just as unlawful to make such sale in a private home as it would be in a club or a store or on the street. A club is an assemblage of individuals for a common purpose and may be an entirely lawful organization, and there are many such. Clubrooms are the rooms or quarters used by a club, and the word has no other meaning. If it is still the law that a man may lawfully bring

liquor into or receive liquor in territory where its sale is prohibited by statute or ordinance, and may lawfully own liquor and consume or use such liquor as long as he does so in such a manner that the rights of others are not interfered with, what difference does it make whether he receives or keeps or drinks or uses such liquor at his house, or at his barn, or at his club? He would have the same right in a house that he leased as in a house that he owned. Accordingly, if he rented a room at a club and lived there he would have the right to keep liquor there and use it there; and if he rented a locker at the club instead of a room, would he not have the same right? In *Sullivan* v. *City of Oneida, supra,* on page 248 of the opinion, it is said: "Spirituous liquors, ale and beer are property,—as much so as money or lands. They are chattels—are articles of consumption and of commerce. The ordinance recognizes them as property and directs their sale on execution and permits druggists to keep them. Their abuse may be restrained and punishment inflicted upon those who sell them to the injury of others. They may, as well as other chattels, come under the designation of nuisance and to a certain extent lose their quality as property, but they cannot *per se* lose their quality as property." In *People* v. *Young,* 237 Ill. 196, in construing the effect of the Local Option law, it was held that the law, being penal in character, must be strictly construed; that its purpose was to prevent the sale, barter and exchange of intoxicating liquor in dry territory, and not to prevent one who has become the owner of intoxicating liquor in wet territory from taking it into dry territory. On page 203 of the opinion it is said: "The act does not in any of its provisions attempt to prohibit a sale and delivery of liquor in wet territory, nor is there any attempt to prevent one who has become the owner of intoxicating liquor in wet territory from bringing that liquor into dry territory. Such transactions as the two last mentioned have none of the unlawful elements of a sale, barter or exchange

of intoxicating liquor in dry territory. It is true that the transaction in this case enabled the purchaser to have the beer delivered to him in dry territory by a common carrier pursuant to a sale and shipment made by the brewer in wet territory and enabled him to own the beer and to have it in his immediate possession in dry territory, but these things the statute has not forbidden. We think there is no evidence of any attempt to evade any of the provisions of the act by the use of a shift or device of any kind."

As to the right of appellee to enact the ordinance in question under its police powers, conceding that the provision of its charter "to regulate the police of the town" gives it all the power counsel claim for it in this case, it could not, under the guise of the police power, assume to regulate and control the acts and conduct of a citizen by which the public or others are in no way affected in any of their rights and interests. Black, in his work on Intoxicating Liquors, (sec. 38, p. 50,) says: "But it is justly held that a provision in such a law that no person, without a State license, shall 'keep in his possession, for another, spirituous liquors,' is unconstitutional and void. The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it or for some other improper purpose, can by no possibility injure or affect the health, morals or safety of the public, and therefore the statute prohibiting such keeping in possession is not a legitimate exertion of the police power. It is an abridgment of the privileges and immunities of the citizen without any legal justification, and therefore void."

In *Haskell* v. *Howard,* 269 Ill. 550, in which a section of a village ordinance prohibiting signs or advertisements of intoxicating liquor was held invalid, it was said, on page 553 of the opinion: "The exercise of the police power is limited to enactments tending to promote the public health, safety, morals or general welfare. It is for the legislature to determine when an exigency exists for the

exercise of the police power, but what is the subject of such exercise is a judicial question. Under the guise of police regulation the personal rights or liberties of citizens cannot be arbitrarily invaded. (*Ruhstrat* v. *People,* 185 Ill. 133; *Bailey* v. *People,* 190 id. 28; *Haller Sign Works* v. *Training School,* 249 id. 436.) In *People* v. *City of Chicago,* 261 Ill. 16, it was held that if a city was clothed with the whole police power of the State it would not have authority to deprive a citizen of valuable property rights under the guise of prohibiting or regulating something that had no tendency to injure the public health, safety, morals or general welfare. In *Haller Sign Works* v. *Training School, supra,* it was held the police power does not justify interference with private rights for purposes unconnected with the safety, health, morals or general welfare of the public." To the same effect is *City of Zion* v. *Behrens,* 262 Ill. 510, in which it was held that an ordinance prohibiting the smoking of tobacco in certain specified places, including public streets and parks, without reference to any particular circumstances or conditions, is invalid in so far as it applies to such streets and parks, as being an unreasonable restraint upon the personal liberty of the citizen. As stated in that case on page 511 of the opinion: "Many cases decided by this court sustaining various ordinances and statutes under the police power are cited and relied upon. None of the cases heretofore decided by this court go to the extent of sustaining the power of a city to pass an ordinance forbidding an act under all circumstances which can only be offensive or harmful to others under certain conditions."

It has been generally held that the police power does not extend to the deprivation of a citizen of the right to have intoxicating liquor in his possession for his own use. (*Commonwealth* v. *Campbell,* 133 Ky. 50; 117 S. W. Rep. 383; 24 L. R. A. (N. S.) 172; *Ex parte Brown,* 38 Tex. Crim. 295; 42 S. W. Rep. 554; 70 Am. St. Rep. 743; *Lincoln* v. *Smith,* 27 Vt. 328; *Titsworth* v. *State,* (Okla.)

101 Pac. Rep. 288; *Partridge* v. *State*, 88 Ark. 263; 114 S. W. Rep. 215; 20 L. R. A. (N. S.) 321; *State* v. *White*, 71 Kan. 356; 80 Pac. Rep. 589; *State* v. *Gilman*, 22 W. Va. 146; 10 S. E. Rep. 283; 6 L. R. A. 847; *Preston* v. *Drew*, 33 Me. 559; 54 Am. Dec. 64; *State* v. *Williams*, 146 N. C. 618; 61 S. E. Rep. 61; 17 L. R. A. (N. S.) 299; *Eidge* v. *City of Bessemer*, 164 Ala. 599; 51 So. Rep. 246; 26 L. R. A. (N. S.) 394; *Henderson* v. *Hayward*, 109 Ga. 393; 47 L. R. A. 366; 34 S. E. Rep. 590.) The only decision to the contrary to which we have been referred is that of *State* v. *Phillips*, 56 L. R. A. (N. S.) 530, in which it was held that a State does not unconstitutionally deprive one of equal protection of the laws by forbidding the keeping of intoxicating liquor in any locker or other place in any social club or carrying it to such club, although a property right in such liquor is recognized by the law. The opinion in that case is based largely on the dissenting opinion in *Eidge* v. *City of Bessemer, supra,* and hence is contrary to the holding in that case, and also contrary, we think, to the great weight of authority. The court assumed that the ultimate purpose of the Mississippi law was to prohibit the use of liquor as a beverage, which is not the purpose of the Local Option law of this State nor within the powers granted to municipalities, which are limited in their power solely to regulating and suppressing the sale, and not the use, of liquor.

There can be no doubt that if it were possible by law to prevent any intoxicating liquor from being introduced into a town or kept there under any circumstances it would be most effective as a prohibition measure, as there would be no drinking if there were nothing to drink. The power of the appellee, however, extended only to licensing, regulating and prohibiting the sale of intoxicating liquor by adopting such ordinances as would be reasonably necessary to accomplish that purpose, and not to the depriving of residents or persons within the municipality of their property. The

ordinance in question made it unlawful to keep or use what the law recognized as property, and under circumstances in which the public and others were in no way affected or interested. It amounted to depriving appellant and others similarly situated of their property, and to the extent to which it affected appellant, under the stipulation of facts in this case, was *ultra vires* and invalid.

What has been said about the second section of the ordinance applies to the third section. The power delegated to cities to determine what are nuisances does not include the power to declare something a nuisance which is not a nuisance *per se* or recognized as a nuisance by common law or statute. (*City of Chicago* v. *Weber,* 246 Ill. 304; *City of Carthage* v. *Munsell,* 203 id. 474.) Whether any of the places mentioned in the third section would be nuisances in fact, would, of course, depend on the manner in which they were conducted. If it were a case of a member of a family at his own or any private home, or the member of a private club where the public are not allowed, using liquors, that would not make the place where such liquors are used a nuisance. It is not within the power of the city or of the State, nor is it the policy of the latter, to regulate the private life or conduct of a citizen in the use of his property in matters in which he, alone, is affected and others are not necessarily affected. (*Haskell* v. *Howard, supra,* and cases cited.) As said in *City of Carthage* v. *Munsell, supra,* on page 478 of the opinion: "Nor do we think, under the agreed state of facts, that the delivery of such liquors transported from another State to purchasers in the city of Carthage, in this State, can be held to be a nuisance. In the case of *Laugel* v. *City of Bushnell,* 197 Ill. 20, we had before us the question of nuisances as applied to the sale of intoxicating liquors, and on page 26 we said: 'Nuisances may thus be classified: First, those which in their nature are nuisances *per se* or are so denounced by the common law or by statute; second, those which in their nature

are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.; third, those which in their nature may be nuisances but as to which there may be honest differences of opinion in impartial minds. The power granted by the statute to the governing bodies of municipal corporations to declare what shall be nuisances, and to abate the same, etc., authorizes such bodies to conclusively denounce those things falling within the first and third of these classes to be nuisances, but as to those things falling within the second class the power possessed is only to declare such of them to be nuisances as are in fact so.' As we view this case, under the stipulations in this record the transaction properly falls within the second class of nuisances as above classified, and could only become a nuisance from the manner in which it might be conducted, managed, etc. The right of the citizen to purchase goods for his own consumption from dealers in other States, and the right to have those goods carried and delivered to him, are to be classed among the highest rights of the citizen, and can only be curtailed when, in the manner of conducting the business, they may endanger the health, life or property of other citizens. There is nothing in intoxicating liquor inherently dangerous. It can only be said to be dangerous to those who use it. It is not like explosives or dangerous drugs, that may carry with them a menace to the persons and property of others, and there is nothing in the stipulation to disclose that the business as conducted was other than the ordinary course in relation to the carrying and delivering of other articles of trade and commerce that might be, and ordinarily are, carried by such companies. In other words, there is nothing to show ·that in the method of delivery or in the manner of conducting the business there was anything that could be said to be offensive to the public morals or good order, or could in any way tend to disturb anybody in his tranquility of mind, health or body,

safety or right of property. In the absence of such show-
ing it cannot be successfully contended that such business
or transaction may be declared to be a nuisance."

Section 3 in effect declares any place a nuisance where
two persons keep liquor to be divided between them. If
any place is maintained within said town where persons as-
semble for the purpose of drinking liquor, and in so doing
conduct themselves in a disorderly manner or in such a
way as to interfere with the peace, comfort and rights of
others,—or, in other words, if such place is, in fact, al-
lowed to become a nuisance,—it can be abated as such,
but under the stipulation in this case there was nothing of
that kind.

The sections of the ordinance in question, in the par-
ticulars that have been shown, were invalid and void, and
for that reason the judgment of the lower court will be
reversed.

*Judgment reversed.*