# Williams *v.* The State.

### *Violating Prohibition Law.*

(Decided January 29, 1913. 60 South. 903.)

1. *Intoxicating Liquors; Statutes; Validity.*—A statute prohibiting traffic in intoxicating liquors is valid and the legislature may enact such laws to prevent evasions thereof as are deemed necessary, provided property rights in such liquors and personal freedom in their use are recognized.

2. *Same.*—Acts of 1909, pages 86 and 87, is a valid statute to prevent evasions of the prohibition law, as it merely affects the conduct of persons in their relation to others and is not in conflict with the 14th Amendment of the Federal Constitution or with section 35, Constitution of Alabama, 1901.

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. PEARSON.

George Williams was convicted of violating the prohibition law and appealed to the Court of Appeals, who certified the constitutional question involved to the Supreme Court.　Constitutionality of the act upheld.

H. J. LANCASTER, GEORGE F. SMOOT and STEINER, CRUM & WEIL, for appellant.　No brief reached the Reporter.

ROBERT C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SAYRE, J.—The statute (Acts Sp. Sess. 1909, pp. 86, 87) dealing with the subject of intoxicating liquors makes it "unlawful for any person, firm, or corporation, or assocation, whether a common carrier or not * * * to convey or transport over or along any public street or highway any of such prohibited liquors for another," and denounces any violation as a misdemeanor.

The Court of Appeals inquires whether the quoted provision of the statute offends against section 35 of the Constitution of Alabama or the fourteenth amendment to the Constitution of the United States.

It appears from the brief for appellant filed in the Court of Appeals, and transmitted to us for the convenience of this court, that our decision in *Eidge v. City of Bessemer*, 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394, may have been the subject of some misapprehension.　In that case we quoted the author of Black on Intoxicating Liquors as follows: "The evil to be avoided is the communication from one to another of an article which may be injurious to the recipient, or which, by its general use, may demoralize or harm the whole community.　It is not attempted to restrain a man's private indulgence in drink; but that is be-

cause the law deals not with the isolated individual, but with men in their relation to each other." Attention to the question there presented for review will disclose the fact that, as against a municipal ordinance which was construed as prohibiting the keeping of intoxicating liquors for the personal use of the keeper, or rather, perhaps, as based upon a principle which involved that result, we endeavored to state some reservations in favor of the property rights and personal liberty of the individual with which the Legislature of the state had made no attempt to interfere. There was no denial of the right of municipal corporations to pass ordinances in accord with prohibition laws, and of course there was no denial of the right of the Legislature to enact statutes, to prohibit the traffic in intoxicating liquors and such ordinances and statutes to prevent evasions as have real and substantial relation to the purpose of prohibition without invading rights secured by the fundamental law. The object of the decision was to develop a statement of the right of persons in this state, under existing conditions, to keep liquors for their own use and to affirm the invalidity of municipal ordinances so broadly phrased as to deny that right. The validity of laws prohibiting the traffic in intoxicating liquors being conceded, it is obvious that the keeping for sale and the conveyance or transportation for another may not only operate in aid of evasions of law prohibiting the traffic, but in ordinary cases will constitute integral and necessary elements of the thing prohibited. This is not to say that everything that may be perverted to the commission of crime or offense against the moral policy of the state may itself be prohibited. So long as property rights in intoxicating liquors and personal freedom in respect to their use are recognized by the courts—and they cannot well be

denied altogether—there must be limits beyond which the Legislature cannot go. Without undertaking to set them down—a difficult task in the present condition of state and federal interrelated law on the subject—it will suffice for the disposition of the case in hand to say that we think the particular prohibition inquired about affects the conduct of men in their relations to one another, the community, that to carry for another, like a keeping for sale, involves necessarily the purpose of delivery to another, and that it may be held to be within legislative competency without a further constriction of those already narrow limits to which personal and property rights in respect to the use and ownership of intoxicants have been confined by the very general agreement of the courts. Of the case of *West Virginia v. Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847, from which we quoted in the *Eidge Case,* and upon which appellant relies, it need only be said that its general trend and effect are not out of line with what we have had to say in this case.

We hold that the provision of the statute in question does not, so far as we are advised, offend against those constitutional provisions to which we are referred by the inquiry from the Court of Appeals.

Let this be certified to the Court of Appeals.

All the Justices concur.

MCCLELLAN, J.—(concurring.) — Being of the opinion that the views entertained and expressed by the dissenting justices (of whom, with Justices Simpson and Denson, I was one) in *Eidge v. City of Bessemer,* 164 Ala., pp. 607-622, 51 South. 246, 26 L. R. A. (N. S.) 394, were and are correct and sound, I desire to limit my concurrence in the response to the questions certified, in this instance, by the Court of Appeals to

their concrete answers, excluding my agreement to the opinion (ante) in the particular in which the majority view in the *Eidge Case* is reaffirmed. Additionally, I am unable to see how, on principle, the pertinent doctrine of *Fitzpatrick v. State*, 169 Ala. 1, 53 South. 1021 (subsequently delivered), can be reconciled with the majority view in *Eidge's Case, supra*.