(78 South. 98)

MORAGNE v. STATE. (6 Div. 85.) *

(Court of Appeals of Alabama. Jan. 22, 1918. Rehearing Denied Feb. 26, 1918.)

INTOXICATING LIQUORS ⨀⇒238(1) — INTERSTATE TRANSPORTATION—JURY QUESTION.

Evidence that accused was employed to transport intoxicating liquors through Alabama in transit from Georgia to Florida by automobile in order to make a test case and that such method of transportation was unusual *held* to make a jury question whether defendant's engagement in interstate commerce was bona fide or a subterfuge to avoid the Alabama prohibition laws.

Appeal from Criminal Court, Jefferson County; H. P. Heflin, Judge.

Frank Moragne, alias Frank Moriner, was convicted of unlawfully transporting intoxicating liquors, and he appeals. Reversed and remanded.

See, also, ante, p. 26, 74 South. 862; 200 Ala. 689, 77 South. 322.

John W. Altman, of Birmingham, for appellant. F. Loyd Tate, Atty. Gen., and E. S. Thigpen, Asst. Atty. Gen., for the State.

BROWN, P. J. In disposing of this case on its first consideration it was said:

"The facts material to a disposition of the questions presented on this appeal are without dispute, and, when treated in the light most favorable to the defendant, are as follows: By arrangement made with one Morris, of Pensacola, Fla., in Birmingham, Ala., in November or December, 1915, the appellant agreed and undertook to transport spirituous, vinous, or malt liquors for said Morris from the state of Georgia, through Alabama, to Pensacola, in the state of Florida, in an automobile over the public highways, of this state; and in pursuance of this undertaking the defendant received for this purpose from the agent of the Southern Railroad at Cave Springs, Ga., a shipment of liquors consisting of about 74 gallons of whisky, which had been shipped from Chattanooga, Tenn., consigned to Morris; that these liquors were loaded into his automobile and carried by him over the public roads to a point one mile past Clay, in Jefferson county, Ala., where the defendant was arrested by a deputy sheriff of Jefferson county, Ala., and at the time of his arrest defendant had said liquor in his possession for the purpose of carrying it through the state over the state's public highways to the state of Florida, and claimed to have a through bill of lading for said liquor. It was also shown that Morris had ordered the liquor in due course of business from a wholesale dealer in Chattanooga, Tenn.; that the shipment was made up and in the regular and ordinary way started on its way over the Southern Railway, billed to Cave Springs, Ga., and from there via automobile to Pensacola, Fla." Ante, p. 26, 74 So. 862.

These facts unquestionably show that when the defendant received the liquors in question he received them for the express purpose of bringing them into this state and transporting them over the highways of this state in defiance of the statute (Acts 1915, p. 27, § 24), and, following the lead of the Supreme Court of this state and of the United States Supreme Court in the application of the Webb-Kenyon Law (Act Cong. March 1, 1913, c. 90, 37 Stat. 699 [U. S. Comp. St. 1916, § 8739]), we held, as applied to the facts in this case, that the Webb-Kenyon Law denied to the liquors the character of a commodity of interstate commerce, and, this being true, the defendant, like all other persons who transported prohibited liquors over the public highways of the state, was amenable to the laws of this state, and could not claim the protection of an interstate carrier of interstate commerce. This ruling seems to us to be in accord with the following applications of the Webb-Kenyon Law:

"The Webb Bill, which we have above quoted, outlaws intoxicating liquors which are shipped into this state from another state, and which are shipped into this state for illegal purposes. Intoxicating liquors which are shipped into this state from another state for illegal purposes are therefore, in so far as this state is concerned, not the subjects of interstate commerce. They are outlaws, and are to be dealt with by the courts as such. Such liquors are not now recognized as legitimate subjects of transportation, and a common carrier caught in the possession of such liquors, liquors which, under the express terms of the Webb Bill, it is prohibited from bringing into this state, cannot escape the operation of the laws of this state by showing

its own violation of a federal statute, passed confessedly for the purpose of aiding this state in its policy, through prohibitory laws, of encouraging temperance among all of its people." Southern Express Co. v. State, 188 Ala. 454, 66 South. 115.

"The power of Congress to regulate interstate commerce, includes the power to declare what shall be interstate commerce, and it may distinguish between things deleterious and things beneficial or innocuous and deny absolute or conditional entrance into interstate commerce things which are deleterious; hence the provisions of the Webb-Kenyon Law were within the power of Congress to enact.

"The Webb-Kenyon Law divests intoxicating liquors of their character with reference to interstate commerce in the cases contemplated and described in the act, and in such cases such liquors can only be regarded, when transported from one state to another, as if the federal Constitution had not contained the commerce clause, and so construed the act as not invalid as delegating federal authority to the states.

"The Webb-Kenyon Law prohibits intoxicating liquors from entering into interstate commerce where the purpose is unlawful under valid state statutes, and any valid exercise of the police power of the state is not an attempted regulation of interstate commerce." Southern Express Co. v. Whittle, headnotes 1, 2, and 3, 194 Ala. 406, 69 South. 652, L. R. A. 1916C, 278.

"The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law having been in express terms divested by the Webb-Kenyon Act of their interstate commerce character, it follows that, if that act was within the power of Congress to adopt, there is no possible reason for holding that to enforce the prohibitions of the state law would conflict with the commerce clause of the Constitution." Clark Distilling Co. v. Western Md. Ry. Co., 242 U. S. 325, 37 Sup. Ct. 185, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845.

"Since our decision in Clark Distilling Co. v. Western Md. Ry. Co., 242 U. S. 311, 320, 324, 37 Sup. Ct. 180, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845, it has not been open to serious question that the Webb-Kenyon Law is a valid enactment; that 'its purpose was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in states contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at naught'; and that under it a state may inhibit shipments therein of intoxicating liquors from another by a common carrier although intended for the consignee's personal use where such use is not actually forbidden. Plainly, therefore, after that enactment nothing in the laws or Constitution of the United States restricted North Carolina's power to make shipment of intoxicants into Wake county a penal offense irrespective of any personal right in a consignee there to have and consume liquor of that character. The challenged act, instead of interposing an absolute bar against all such shipments, as it was within the power of the state to do, in effect permitted them upon conditions intended to secure publicity, to the end that public policy might not be set at naught by subterfuge and indirection." Seaboard Air Line Ry. v. North Carolina, 245 U. S. 298, 38 Sup. Ct. 96, 62 L. Ed. 299, December 10, 1917.

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment." Crane v. Campbell, 245 U. S. 304, 38 Sup. Ct. 98, 62 L. Ed. 304, December 10, 1917.

In the case of Van Winkle v. State of Delaware, 27 Del. (4 Boyce) 578, 91 Atl. 385, Ann. Cas. 1916D, 104, the Supreme Court of that state made the same application of the Webb-Kenyon Law as was made in the instant case by the Supreme Court. In that state there was a statute in this language:

"That it shall be unlawful for any common carrier, knowingly to accept or receive for shipment, transportation or delivery to any person or place within local option territory, or to carry, bring into, transfer to any other person, carrier or agent, to handle, deliver or distribute in local option territory, any spirituous, vinous or malt liquor, regardless of the name by which it may be called."

The defendant in that case was the agent of the Adams Express Company, and was convicted under this statute for handling prohibited liquors in local option territory, in violation of the statute. The Supreme Court of the state of Delaware held, as did the Supreme Court of this state in the instant case, that the Webb-Kenyon Law was not applicable, and that Van Winkle was entitled to claim protection under the commerce clause of the Constitution. Chief Justice White, speaking for the Supreme Court of the United States with reference to this case said:

"The leading state case cited is Van Winkle v. State, 27 Del. [4 Boyce] 578 [91 Atl. 385, Ann. Cas. 1916D, 104]. It is true in that case the state law prohibited shipment to and receipt of intoxicants in local option territory, and if the Webb-Kenyon Law had been applied, there would have been no possible ground for claiming that the state prohibitions could be escaped because the liquor was shipped in interstate commerce. But the shipment was held to be protected as interstate commerce, despite the state prohibition because the Webb-Kenyon Law was not correctly applied, for the following reason: Coming to consider the text of that law, the court said that as the Webb-Kenyon Act prohibited the shipment of intoxicants 'only when the liquor is intended to be used in violation of the law of the state,' and as the liquor shipped was intended for personal use, which was not forbidden, therefore the shipment, although prohibited by the state law, was beyond the reach of the Webb-Kenyon Act. But we see no ground for following the ruling thus made, since, as we have already pointed out, it necessarily rested upon an entire misconception of the text of the Webb-Kenyon Act, because that act did not simply forbid the introduction of liquor into a state for a prohibited use, but took the protection of interstate commerce away from all receipt and possession of liquor prohibited by state law." Clark Distilling Co. v. Western Md. Ry. Co., supra.

Notwithstanding these applications of the Webb-Kenyon Law by the Supreme Court of the United States, our Supreme Court in this case holds that the prohibition laws of this state are not applicable to shipments of the character above indicated, and to apply them to such shipments would render the statutes unconstitutional. Moragne v. State, 200 Ala. 689, 77 South. 322, Supreme Court.

In view of the construction and applica-

tion given the Webb-Kenyon Law by the United States Supreme Court to the effect that the act of Congress does not simply forbid the introduction of liquor into a state for prohibited use, but takes the protection of interstate commerce from all receipt, possession, and handling of liquors prohibited by the laws of the state (Clarke Distilling Co. v. Western Md. Ry. Co., supra), and the further holding in Crane v. Campbell, supra, that it is now within the power of the state to prohibit the transportation or handling of intoxicating liquors within its borders, without violating any provision of the federal Constitution, we are not certain upon what principle or constitutional provision the holding of our Supreme Court is rested.

After prohibited liquors have been denied the protection accorded to commodities of interstate commerce, is it possible that the combined authority of Congress and the Legislature of the state is impotent to prevent the transportation of prohibited liquors on the public highways of the state, as a measure of preventing subterfuges that have for their purpose the setting at naught of the laws of the state? Is not the authority of the Legislature of this state affirmed in the holding of the Supreme Court in the following case, where it is held that an act prohibiting the transportation of intoxicating liquors over the public highways of the state does not offend the Fourteenth Amendment of the federal Constitution, nor section 35 of the state Constitution? Williams v. State, 179 Ala. 50, 60 South. 903.

In view of the provision of section 19 of the act cited supra (Acts 1915, p. 47), providing "that this act shall be construed in harmony with all statutes of the United States relating to the transportation of the liquors mentioned in section 1 of this act into this state from points or places outside of the state mentioned in section 1 of this act, and other federal statutes bearing upon interstate shipments of such liquors," we do not see how it can be said that it was not the legislative intent that these statutes should apply to such transactions as here presented. Does not this section clearly manifest the legislative intent to draw to the prohibition laws of the state all the aid of the Webb-Kenyon Law, and thus make the state law effective to prevent just such subterfuges?

In view of the ruling in the case of State ex rel. Black v. Southern Express Co., 75 South. 343,[1] we do not see how the conclusion can be avoided. It was there held that:

"The statutes enacted during the session of the Legislature of 1915 relating to the subject of temperance are in pari materia, and should be so construed." "Many of the laws of Alabama token and validly effectuate a purpose to avail of the opportunity afforded the state by the federal Webb-Kenyon Act to promote temperance and to prevent drunkenness." "Where an interstate consignment of liquors is intended by any person interested in same to be a means of violating a valid state law governing the liquors described in the Webb-Kenyon Act, it does not become an article of lawful interstate commerce, nor can an interstate carrier accepting and delivering same invoke the law applicable to lawful interstate commerce to justify transportation and delivery of the shipment." "The inherent limitations on the territorial operation of the state laws cannot protect an interstate carrier in accepting outside the state intoxicating liquors for transportation into Alabama in violation of the statutes of Alabama, since Webb-Kenyon Act March 1, 1913, * * * has appropriated the rule of the state law to define a national prohibition against the unlawful entry of certain liquors in interstate commerce."

However this may be, the holding of the Supreme Court in this case necessitates a reversal of the judgment of the trial court.

In addition to the facts stated above, there was evidence tending to show that the shipment of the liquors in question, by prearrangement between Morris and defendant, was to be made a test case for the purpose of determining whether or not the state laws were effective in preventing the carrying of such liquor over the public highways of this state, and that Morris had agreed to protect the defendant in the expense incident to the test case. This fact was noticed in the former ruling of this court in passing upon the argument of the solicitor to the jury, in which it was stated:

"The defendant's testimony tended to show that it was a part of the arrangement with Morris that Morris 'would take care of him,' and the solicitor had a right to comment on this evidence."

There was also evidence tending to show that transportation by this method was unusual, and more expensive than transportation in the usual way by railroad or express. This evidence had some tendency to show that the purpose of this shipment was to lay a foundation for setting at naught the state laws by the subterfuge of claiming protection under the commerce clause of the Constitution, and this view necessitated a submission of the case to the jury, and it was for them to determine whether or not the defendant was bona fide engaged in carrying interstate commerce, or whether it was a mere subterfuge. Howard v. State, 15 Ala.App.411, 73 South.559.

We deem what has been said a sufficient guide for another trial.

Reversed and remanded.